# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

**No. ACM S32489**

————————————

**UNITED STATES**
*Appellee*

**v.**

**Christian R. BELLO**
Airman First Class (E-3), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary

Decided 7 May 2019

————————————

*Military Judge:* Jennifer E. Powell.

*Approved sentence:* Bad-conduct discharge, confinement for 4 months, and reduction to E-1. Sentence adjudged 24 August 2017 by SpCM convened at Malmstrom Air Force Base, Montana.

*For Appellant:* Major Mark J. Schwartz, USAF.

*For Appellee:* Major Michael T. Bunnell, USAF; Mary Ellen Payne, Esquire.

Before HUYGEN, MINK, and KIEFER, *Appellate Military Judges.*

Judge KIEFER delivered the opinion of the court, in which Senior Judge HUYGEN and Judge MINK joined.

————————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.**

————————————

KIEFER, Judge:

Appellant was charged with aggravated assault and obstruction of justice under Articles 128 and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 928, 934. Appellant pleaded not guilty to aggravated assault but en-

tered an unconditional guilty plea to the lesser included offense of assault consummated by a battery under Article 128, UCMJ. Appellant submitted a conditional guilty plea to obstruction of justice,[1] and the military judge entered findings of guilty to this offense. The parties litigated the aggravated assault specification before a panel of officer and enlisted members. At the close of the Government's case, the military judge granted the Defense's motion for a finding of not guilty of aggravated assault pursuant to Rule for Courts-Martial (R.C.M.) 917. The military judge then entered a finding of guilty of assault consummated by a battery in accordance with Appellant's plea to the lesser offense. The members sentenced Appellant to a bad-conduct discharge, four months of confinement, and reduction to the grade of E-1. The convening authority approved the sentence as adjudged.

On appeal, Appellant challenges his conviction for obstruction of justice and asserts one assignment of error: whether the military judge abused her discretion in denying the defense motion to suppress the evidence from the search and seizure of Appellant's cell phone. We find that the military judge did abuse her discretion and accordingly set aside the findings of guilty of obstruction of justice.

## I. BACKGROUND

On 4 June 2017, Appellant was at a bar near Malmstrom Air Force Base (AFB), Montana. At some point during the evening, Appellant left the bar and was standing outside with his friends as Senior Airman (SrA) WG was entering the bar. Appellant said something to a person who was with SrA WG, and Appellant and SrA WG exchanged words. As the verbal confrontation escalated, Appellant and SrA WG moved very close to each other, and Appellant ultimately punched SrA WG twice in the face. SrA WG fell to the ground, striking his head on the pavement and sustaining a skull fracture and subdural hemorrhage.

Air Force authorities were notified about the incident, and the Air Force Office of Special Investigations (AFOSI) began an investigation. AFOSI agents obtained and reviewed security camera footage of the parking lot on the night of the fight. This footage showed that, prior to the fight, Appellant reached into his pants pocket, retrieved a cell phone, and handed it to a female who was

---

[1] Following the military judge's denial of the defense motion to suppress evidence from Appellant's cell phone, the Defense offered and the Government consented to the conditional guilty plea, thereby preserving the issue of the cell phone search and seizure for appellate review.

watching the events unfold. She appeared to record or photograph the fight with the phone.

During the AFOSI investigation, Special Agent JF prepared an affidavit to obtain search authorization for Appellant's cell phone. On 15 June 2017, a military magistrate granted authorization to search and seize Appellant's cell phone for "electronic media depicting the assault."

Later on 15 June 2017, Appellant was brought to the AFOSI office for questioning. He was read his Article 31, UCMJ, 10 U.S.C. § 831, rights, and he invoked his right to counsel. *See* Mil. R. Evid. 305(c). Special Agent JF next asked Appellant for consent to search his cell phone. Appellant declined to give his consent. Special Agent JF then told Appellant that AFOSI had search authorization for his cell phone. Special Agent JF handed the phone to Appellant and "told [Appellant] to unlock the phone and disable the auto-lock feature and also put it in airplane mode." Appellant unlocked the phone and handed it back. Special Agent JF took the phone, connected it to a computer, and created a digital image of all the phone's stored data. Special Agent JF then conducted a "manual" search of the phone by touching various screens and reviewing some limited sections of the phone. He then gave the phone back to Appellant. AFOSI analyzed the seized cell phone data for videos or photographs "depicting" the fight, but no such video or photograph was found.

In mid-July 2017, Captain (Capt) CD of the Malmstrom AFB legal office was reviewing documents to respond to a defense discovery request. One of the documents was the AFOSI report of the data pulled from Appellant's cell phone in June. The report included text message strings, and, within these text messages, Capt CD found a reference to a video of the fight being sent to another airman. Capt CD contacted the AFOSI agents, who prepared an additional affidavit and obtained from the military magistrate an additional search authorization for the data previously pulled from Appellant's cell phone. The agents did not reacquire Appellant's cell phone at any time.

After further review of the cell phone data, Capt CD and the AFOSI agents identified Airman First Class (A1C) PK as someone who may have received the video of the fight. When questioned, A1C PK admitted to receiving the video and said that, after he received the video, Appellant sent him a message telling him to delete the video and not tell anyone about it. This message was the basis of the Additional Charge and its Specification alleging Appellant engaged in obstruction of justice.

At trial, the Defense moved to suppress the evidence from the search and seizure of Appellant's cell phone. The Defense, in its motion, argued that Appellant was ordered "to both produce the password to his cell phone and to unlock it" and that this compelled production of "testimonial information" was

one of several reasons to suppress the evidence. The Government, in its response, argued that, whether Appellant "voluntarily provided the passcode" or "was ordered to do so," his unlocking the phone was not "testimonial" and therefore there was no violation of Appellant's rights.

The military judge conducted a hearing on the motion and made her ruling denying the Defense's motion orally on the record but not in writing. Her findings of fact included that Appellant did not consent to the search and seizure of his phone and that Special Agent JF "seized" the phone but did not include a finding about the unlocking of the phone. The military judge also indicated she considered, *inter alia*, the Fourth Amendment to the United States Constitution[2] but did not mention the Fifth Amendment.[3] The military judge's conclusions of law did not address the issue of Appellant unlocking the phone after he was told to do so.

## II. DISCUSSION

### A. Cell Phone Search and Seizure

#### 1. Law

We review a military judge's denial of a motion to suppress for an abuse of discretion. *United States v. Chatfield,* 67 M.J. 432, 437 (C.A.A.F. 2009) (citing *United States v. Pipkin,* 58 M.J. 358, 360 (C.A.A.F. 2003)). Under this standard, we uphold the military judge's findings of fact unless they are clearly erroneous or unsupported by the record. *United States v. Leedy,* 65 M.J. 208, 213 (C.A.A.F. 2007) (citations omitted). We review de novo any conclusions of law. *Chatfield,* 67 M.J. at 437 (citations omitted). A military judge commits an abuse of discretion when: (1) the findings of fact upon which the ruling is predicated are not supported by the evidence of record; (2) incorrect legal principles are used; or (3) "application of the correct legal principles to the facts is clearly unreasonable." *United States v. Ellis,* 68 M.J. 341, 344 (C.A.A.F. 2010) (citing *United States v. Mackie,* 66 M.J. 198, 199 (C.A.A.F. 2008)).

The Fifth Amendment to the United States Constitution provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself . . . ." U.S. CONST. amend. V. Because "[t]he circumstances surrounding in-custody interrogation can operate very quickly to overbear the will of one merely made aware of his privilege by his interrogators. . . . the right to have

---

[2] U.S. CONST. amend. IV.

[3] U.S. CONST. amend. V.

counsel present at the interrogation is indispensable to the protection of the Fifth Amendment privilege." *Miranda v. Arizona,* 384 U.S. 436, 469 (1966).[4]

In *Edwards v. Arizona*, 451 U.S. 477, 484–85 (1981)*,* the Supreme Court of the United States added a second prophylactic layer against potential law enforcement misconduct during suspect interviews. *See also United States v. Mitchell*, 76 M.J. 413, 419 (C.A.A.F. 2017) (citations omitted). The United States Court of Appeals for the Armed Forces (CAAF) addressed the *Edwards* holding in *United States v. Mitchell* and wrote:

> Once a suspect in custody has "expressed his desire to deal with the police only through counsel, [he] is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication." *Edwards,* 451 U.S. at 484–85 . . . ; *see* [Mil. R. Evid.] 305(e)(3). "In every case involving *Edwards*, the courts must determine whether the suspect was in custody when he requested counsel and when he later made the statements he seeks to suppress." *Maryland v. Shatzer,* 559 U.S. 98, 111, 130 . . . (2010).

76 M.J. at 417 (first alteration in original). The CAAF's predecessor also recognized that *"Edwards* clearly applies to the military." *Id.* (quoting *United States v. Dock,* 40 M.J. 112, 115 (C.M.A. 1994)) (citation omitted).

"[O]n direct review, we apply the clear law at the time of appeal, not the time of trial." *United States v. Mullins*, 69 M.J. 113, 116 (C.A.A.F. 2010) (citing *United States v. Harcrow*, 66 M.J. 154, 159 (C.A.A.F. 2008)).

### 2. Analysis

On appeal, Appellant asserts that the military judge abused her discretion by denying the Defense's motion to suppress the evidence derived from the search and seizure of his cell phone. In particular, Appellant points to his invocation of Article 31, UCMJ, rights and law enforcement's subsequent direction for him to unlock his phone. The derivative evidence at issue on appeal is Appellant's text message to A1C PK, which the Government did not find until it conducted a second review of the seized cell phone data. Notably, the issue was preserved at trial and is raised on appeal only with regard to the conviction for obstruction of justice, to which Appellant entered a conditional guilty plea,

---

[4] The Sixth Amendment right to counsel is inapplicable to this case as charges had not yet been preferred at the time of the interview. *See Kirby v. Illinois*, 406 U.S. 682, 688 (1972) (plurality opinion); *United States v. Adams*, 45 C.M.R. 175, 179 (C.M.A. 1972); Mil. R. Evid. 305(c)(3).

and not his conviction for assault consummated by a battery, to which he pleaded guilty unconditionally.

Appellant claims error by the military judge on multiple theories, but, based only on an analysis of the Fifth Amendment right to counsel, we set aside the conviction for obstruction of justice and thus do not address Appellant's other arguments.

As a threshold matter, we find no clear error in the military judge's findings of fact on the defense motion to suppress. However, the military judge made no finding of fact that specifically addresses the issue before us regarding Appellant being directed to unlock his cell phone. Although we consider the evidence in the light most favorable to the Government as the party that prevailed on the motion at trial, *see Mitchell*, 76 M.J. at 417 (citation omitted), we also consider the information that was not contested or rebutted by the Government at trial or on appeal: Appellant's AFOSI interview on 15 June 2017 was a custodial interrogation; he was entitled to, and received, an advisement of Article 31, UCMJ, rights; he invoked his right to counsel; he denied consent to search his cell phone; he was told to unlock his cell phone, disable the auto-lock function, and put it in airplane mode; and he complied with that direction, thereby providing AFOSI with access to the phone's contents.[5]

In *Mitchell*, the appellant similarly had invoked his right to counsel and was in a custodial interrogation when an investigator informed him of a search authorization for his cell phone. 76 M.J. at 416. The investigator asked Mitchell for his phone, which he provided. *Id.* The investigator asked him to provide his passcode, and Mitchell refused. *Id.* The investigator then handed the phone to Mitchell and asked him to unlock it, at which point he entered his passcode to unlock the phone. *Id.*

Deciding *Mitchell* six days after Appellant's trial concluded, the CAAF found that the "line of questioning" first to provide the passcode and then to unlock the phone constituted "interrogation." *Id.* at 418. The CAAF further found that, when law enforcement "switched tactics and succeeded in getting [Mitchell] to enter his passcode rather than verbally provide it, that request was part of the same basic effort to convince [Mitchell] to provide the information necessary for the Government to access and search the contents of his

---

[5] As the Government points out in its brief on appeal, there was no evidence in the record that Appellant was ordered specifically to provide his passcode or that he disclosed his passcode. However, the Government at trial implicitly conceded that Appellant provided his passcode. Regardless, we need not make a definitive determination how Appellant unlocked his cell phone because the record is clear that he did unlock it after being told to do so by Special Agent JF, following the invocation of his Fifth Amendment right to counsel.

phone." *Id.* Mitchell's "response" of unlocking his cell phone constituted "an implicit statement" that he owned the phone and could access it. *Id.* (referring to a point "even the dissent concedes").

Like Mitchell, Appellant invoked his right to counsel. Unlike Mitchell, Appellant was then asked for consent to search his cell phone, and he declined. Special Agent JF then "told" Appellant to unlock his phone and disable the auto-lock function, which Appellant did. In light of the uncontroverted fact that Appellant invoked his right to counsel at the beginning of AFOSI's custodial interrogation, we deem AFOSI's later direction for Appellant to unlock his phone, disable the auto-lock feature, and put it in airplane mode an interrogation of the same nature identified in *Mitchell*. Once this custodial interrogation occurred following Appellant's invocation of his right to counsel, "the violation of [Appellant's] rights under *Edwards* was complete." *Id.* at 419. While *Mitchell* notes that the interrogation need not produce a testimonial statement to establish an *Edwards* violation, here, Appellant's "response" of unlocking his phone and disabling the auto-lock feature at least produced incriminating information indicating his ownership and control of the phone. Appellant's "response" was the effective equivalent of the events in *Mitchell* that the CAAF found to endanger the Fifth Amendment privilege against self-incrimination and violate the protective rule of *Edwards*.[6] *See id.*

In *Mitchell*, the CAAF went on to find that "[u]nder the plain language of the Military Rules of Evidence, any evidence derived from a violation of *Edwards* must be suppressed." *Id.* at 419. "If a person suspected of an offense and subjected to custodial interrogation requests counsel, any statement made in the interrogation after such request, *or evidence derived from the interrogation after such request*, is inadmissible against the accused unless counsel was present for the interrogation." *Id.* (quoting Mil. R. Evid. 305(c)(2)). We find similarly here that the text message to A1C PK that formed the basis of Appellant's charge for obstructing justice was evidence derived from a custodial interrogation after Appellant had invoked his right to counsel but had not been provided

---

[6] Like the CAAF in *Mitchell*, we need not and thus do not address whether Appellant's unlocking of his cell phone, however it was done, was "testimonial" or "compelled." *See* 76 M.J. at 419. We also do not consider Appellant being told to unlock his phone another request for consent to search or a continuation of the request for consent Appellant had refused. *See* 76 M.J. at 418 ("asking [Mitchell] to *state* his passcode involves more than a mere consent to search").

such counsel.[7] Appellant's Fifth Amendment right to counsel was violated, and that violation provided the Government incriminating information. Applying *Mitchell*, we determine the military judge abused her discretion by denying the defense motion to suppress the evidence from Appellant's cell phone that formed the basis to charge and convict him of obstruction of justice.[8] Accordingly, we set aside Appellant's conviction.

## B. Sentence Reassessment

Having set aside Appellant's conviction for obstruction of justice, we next evaluate whether we should reassess the sentence or return this case for a sentence rehearing. To reassess a sentence, a service court of criminal appeals (CCA) must be able to reliably ascertain "what sentence would have been imposed at the trial level if the error had not occurred." *United States v. Sales*, 22 M.J. 305, 307 (C.M.A. 1986). The CCA must be able to determine that, absent the error, the "sentence would have been at least of a certain magnitude." *Id.*

The CAAF has set forth a list of non-exhaustive factors that CCAs may consider in determining whether to reassess sentence or permit a sentence rehearing, including: (1) whether there are dramatic changes in the penalty landscape or exposure; (2) whether the appellant was sentenced by members or by military judge alone; (3) whether the "remaining offenses capture the gravamen of criminal conduct included within the original offenses;" and (4) "[w]hether the remaining offenses are of the type that judges of the [CCAs] should have the experience and familiarity with to reliably determine what sentence would have been imposed at trial." *United States v. Winckelmann*, 73 M.J. 11, 15–16 (C.A.A.F. 2013) (citations omitted).

Here, setting aside the obstruction of justice conviction has an impact on the penalty landscape. The maximum period of confinement based on Appellant's convictions, without regard to forum, was five years and six months, which included five years for the obstruction of justice offense and six months for the assault consummated by a battery. This suggests the relative serious-

---

[7] The Government cited the good faith exception and the attenuated witness doctrine in an effort to insulate the derivative evidence concerning A1C PK from the problems of the first cell phone search. However, these legal theories rely on a Fourth Amendment analysis and thus are inapplicable to our holding based on Appellant's Fifth Amendment right to counsel.

[8] We also find that, to the extent the record may be lacking with regard to specific facts detailing precisely how Appellant unlocked his cell phone, the military judge "failed to address relevant considerations" in denying the defense motion to suppress, and this constituted an abuse of discretion. *See United States v. Mott*, 72 M.J. 319, 329 (C.A.A.F. 2013) (citation omitted); *see also Leedy,* 65 M.J. at 213.

ness of the offenses, from a maximum confinement perspective, weighed heavily toward the obstruction offense, and its removal from the sentencing calculus has a significant impact on the overall sentencing landscape. In this case, that impact is lessened by the fact that Appellant was tried by a special court-martial, in which forum his maximum period of confinement was 12 months for all offenses. Consequently, after setting aside the conviction for obstruction of justice, we consider that the maximum period of confinement is only reduced by six months, which factor favors reassessment.

We next note that Appellant was sentenced by a panel of officer and enlisted members. As stated in *Winckelmann*, judges of the CCAs "are more likely to be certain of what a military judge would have done as opposed to members." 73 M.J. at 16. This factor weighs in favor of a rehearing.

With respect to the gravamen of criminal conduct, almost the entire case at trial was dedicated to the assault offense. The Government's aggravation evidence focused on the assault and included the facts that the victim never threw a punch or made a physically aggressive move and that Appellant and his friends left the victim lying on the ground unconscious. The Government recommended a sentence that included nine months of confinement and suggested the members adjudge six months for the assault. Conversely, the Government requested the members allocate only three months of confinement for the obstruction of justice. Both parties' sentencing presentations indicated the gravamen of criminal conduct was the assault. Therefore, this factor weighs in favor of reassessment.

Finally, appellate judges are generally familiar with the offense of assault consummated by a battery. In this case, the impact on the victim was serious, but the assault itself consisted of two punches in immediate succession and was not characterized by continuing strikes and blows. Evidence of Appellant's reaction to the altercation in the minutes and days following the event demonstrated both concerned and cavalier attitudes.[9] The totality of the evidence, however, did not indicate any unique circumstances surrounding the fight with which appellate judges would be unfamiliar.

We find that the assault consummated by a battery was the gravamen of the case, that this offense and the facts of the case are of the type with which appellate judges are generally familiar and experienced, and that the penalty landscape was not dramatically impacted by our setting aside the conviction for obstruction of justice. Accordingly, sentence reassessment is appropriate in

---

[9] The Government offered aggravation evidence that Appellant joked in text messages about the assault in the days following the incident. We are mindful that this evidence was largely the product of the illegal search of Appellant's cell phone. Appellant offered mitigation evidence that he was remorseful shortly after the incident.

this case. Applying the standard set forth in *Sales*, 22 M.J. at 307, we conclude the sentence would have been at least four months of confinement and reduction to the grade of E-1 for one charge and specification of assault consummated by a battery. We also deem that sentence appropriate pursuant to our authority under Article 66(c), UCMJ, 10 U.S.C. § 866(c) (2016).

## III. CONCLUSION

The findings of guilt of the Additional Charge and its Specification are **SET ASIDE** and the Additional Charge and its Specification are **DISMISSED WITH PREJUDICE**. We reassess the sentence to four months of confinement and reduction to the grade of E-1. The remaining findings and the sentence as reassessed are correct in law and fact, and no other error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c) (2016). Accordingly, the remaining findings and the sentence as reassessed are **AFFIRMED**.

FOR THE COURT

CAROL K. JOYCE
Clerk of the Court