# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

———————————

**No. ACM 39642**

———————————

**UNITED STATES**
*Appellee*

**v.**

**Kalab D. WILLMAN**
Staff Sergeant (E-5), U.S. Air Force, *Appellant*

———————————

Appeal from the United States Air Force Trial Judiciary

Decided 2 September 2020

———————————

*Military Judge:* John C. Degnan.

*Approved sentence:* Dishonorable discharge, confinement for 1 year, and reduction to E-4. Sentence adjudged 6 November 2018 by GCM convened at Vandenberg Air Force Base, California.

*For Appellant:* Major Megan E. Hoffman, USAF.

*For Appellee:* Lieutenant Colonel Joseph J. Kubler, USAF; Lieutenant Colonel Brian C. Mason, USAF; Lieutenant Colonel G. Matt Osborn, USAF; Mary Ellen Payne, Esquire.

Before POSCH, RICHARDSON, and MEGINLEY, *Appellate Military Judges.*

Senior Judge POSCH delivered the opinion of the court, in which Judge RICHARDSON joined. Judge MEGINLEY filed a separate opinion concurring in part and in the result.

———————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

———————————

POSCH, Senior Judge:

In accordance with Appellant's unconditional guilty plea pursuant to a pretrial agreement (PTA), a general court-martial composed of a military judge sitting alone found Appellant guilty of one charge and specification of indecent recording of the private area of BM on divers occasions in violation of Article 120c, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 920c.[1] The military judge sentenced Appellant to a dishonorable discharge, confinement for one year, and reduction to the grade of E-4. At action, the convening authority approved the adjudged sentence. In accordance with the terms of the PTA and Article 58b, UCMJ, 10 U.S.C. § 858b, the convening authority also waived mandatory forfeitures of Appellant's pay and allowances for a period of six months, or upon his release from confinement, whichever was sooner, with the waiver commencing on 8 November 2018, for the benefit of Appellant's dependent daughter.[2]

Appellant raises two issues pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982): (1) whether Appellant is entitled to relief because he was compelled to give testimonial information after invoking his right to an attorney and refusing to answer questions; and (2) whether Appellant suffered cruel and unusual punishment in violation of the Eighth Amendment[3] and Article 55, UCMJ, 10 U.S.C. § 855, when he was not given proper medical treatment while in confinement. Alternatively, Appellant contends that the conditions of his post-trial confinement render his sentence inappropriately severe, warranting relief under Article 66(c), UCMJ, 10 U.S.C. § 866(c).[4]

---

[1] All references in this opinion to the Uniform Code of Military Justice, Rules for Courts-Martial (R.C.M.), and Military Rules of Evidence are to the *Manual for Courts-Martial, United States* (2016 ed.).

[2] The PTA placed no limitation on the sentence the convening authority could approve. Among the Government's PTA concessions, the convening authority agreed to dismiss with prejudice a charge and its specifications that alleged Appellant possessed and viewed child pornography.

[3] U.S. Const. amend. VIII.

[4] In addition to these issues, we note the action waived mandatory forfeitures and directed Appellant's pay and allowances "to be paid to AW, spouse of [Appellant], for the benefit of [Appellant's] dependent daughter." Based on the record before us, AW is Appellant's dependent daughter and not his spouse; and this error is repeated in the court-martial order (CMO). Although Appellant is silent about the error in the action, he asserts the CMO error "did not prejudice Appellant or the relief ordered by the Convening Authority," and "Appellant does not raise it as an error here." We find no prejudice to Appellant by the error in either the action or the CMO, and conclude that instructing the convening authority to withdraw the action and substitute a corrected action, *see* R.C.M. 1107(g), is not warranted.

Finding no error materially prejudicial to the substantial rights of Appellant, we affirm.

## I. BACKGROUND

Appellant's conviction is founded on his plea of guilty to making recordings of the private area of BM, a sixteen-year-old female, without legal justification or authorization. Appellant met BM in an Internet chat forum and began communicating with her in private through texts and online video chat sessions. In time, their conversations became sexual and they showed each other their bodies and masturbated during some of these sessions. On 14 occasions, Appellant used his personal laptop computer to record BM engaging in sexually explicit conduct, including masturbating and lasciviously exhibiting her genitals and pubic area to Appellant. BM did not consent to Appellant making recordings of her during these sessions and was unaware she was being recorded.

Appellant's conduct came to the attention of military authorities at Vandenberg Air Force Base (AFB) after BM's mother learned that Appellant sent her daughter a picture of himself with his shirt pulled up to reveal his stomach. BM's mother filed a police report and the matter was ultimately referred to agents of the Air Force Office of Special Investigations (AFOSI) at Vandenberg AFB. At the time she reported Appellant's conduct, BM's mother was not fully aware of details of Appellant's online relationship with her daughter and the extent of their sexual communications.

AFOSI agents opened an investigation and, on 7 November 2016, took Appellant into custody. Before questioning Appellant about his relationship with BM, an agent advised Appellant of his rights, including the right to have counsel present at the interview. *See* Article 31, UCMJ, 10 U.S.C. § 831; Mil. R. Evid. 305. Following the rights advisement, Appellant declined to answer questions and requested legal counsel.

The same day Appellant was questioned, AFOSI agents conducted a search of Appellant's home and seized multiple electronic devices. The AFOSI agents presented Appellant with a search authorization and a written order dated 7 November 2016 and signed by the military magistrate. The written order directed Appellant "to unlock any and all electronic devices seized pursuant to the search and seizure authorization. This include[d] any fingerprint, password, pin number, or other forms of security systems for the electronic devices." The military magistrate also ordered Appellant "to disable all security and/or lock settings for any and all electronic devices seized pursuant to this search and seizure authorization." According to the AFOSI report of investigation, when presented with the search authorization and the written order, Appellant unlocked his phone and disabled the security settings.

Later in their investigation, the AFOSI agents presented Appellant with an additional written order to unlock his other electronic devices. This order was from the alternate military magistrate at Vandenberg AFB. Appellant refused to comply with the order and was issued a letter of reprimand (LOR) by his commander, Colonel KB, for disobeying the direct orders given to him by the military magistrates.[5]

A week after AFOSI agents seized Appellant's electronic devices, a preliminary search of Appellant's cell phone revealed it did not have the applications that Appellant and BM used to meet and communicate over the Internet. Those applications were discovered in software that was installed on Appellant's personal laptop computer. The AFOSI agents' initial review of Appellant's phone also turned up no contraband; however, the AFOSI agents found a picture of Appellant with his shirt pulled up and displaying his abdomen. The AFOSI report of investigation suggests that this picture corroborated BM's account of receiving a picture from Appellant that showed his stomach. Analysis of Appellant's laptop uncovered evidence of Appellant's communications with BM, including videos Appellant recorded of BM and the software Appellant used to record their online sessions.

## II. DISCUSSION

### A. Appellant's Right against Self-Incrimination

Appellant contends he is entitled to relief because he was compelled to give testimonial information when AFOSI agents unlawfully ordered him to unlock his electronic devices after he invoked his right to an attorney and refused to answer questions. In reference to the LOR he received from his commander, Appellant claims he is entitled to relief for the almost two years of stress he experienced having to report for duty knowing that his commander was upset with him for disobeying the unlawful orders that were given to him by the military magistrates. Appellant contends that the only meaningful relief this

---

[5] Inexplicably, the letter of reprimand (LOR) that is attached to the AFOSI report of investigation censures Appellant for disobeying an order from the primary military magistrate on 7 November 2016, even though the AFOSI report indicates that Appellant complied with the order. Also according to the AFOSI report, Appellant was given two additional written orders to unlock his electronic devices, on 5 January 2017 and 19 January 2017, which he failed to obey, but neither incident is referenced in the LOR and the orders are not included in the record. The report indicates that Appellant refused to comply with these orders on the advice of an area defense counsel. Nonetheless, the failure of the record to explain the facts underlying the LOR that Appellant received is not dispositive to our decision.

court can grant is to set aside his conviction because he has already served his sentence and is out of confinement.

### 1. Additional Background

As part of his obligation under the PTA, Appellant agreed to "[w]aive all waivable motions." The military judge conducted an extensive inquiry with Appellant to ensure Appellant understood the meaning and effect of this condition. At one point, the military judge explained:

> [Y]our [PTA] states that you waive or give up the right to make waivable motions. I advise you that certain motions are waived or given up if your defense counsel does not make the motion prior to entering your plea. Additionally, other motions, even if not waived by guilty plea, are nonetheless waived if not brought up during the trial. Some motions, however, such as motions to dismiss for lack of jurisdiction, for example, can never be given up. Do you understand that this term of your [PTA] means that you give up the right to make any motion, which by law is given up when you plead guilty?

Appellant replied, "Yes, sir."

The military judge then asked Appellant, "Do you understand that this term of your [PTA] means you give up the right to make any motion if it is not raised during the trial?" Appellant responded, "Yes, Your Honor." Appellant acknowledged that no one forced him to agree to this term, and that even though the term originated with the Government, Appellant acknowledged he freely and voluntarily agreed to the term in order to receive the benefit of the PTA.

Appellant entered an unconditional plea of guilty to knowingly and wrongfully making a recording of the private area of BM without her consent on divers occasions. During the guilty plea inquiry with the military judge, Appellant explained that he "recorded approximately 14 videos" of BM's private area "using software installed on [his] laptop." Appellant explained that he and BM would have online "video chat sessions" and that he recorded the videos on his laptop. At one point, the military judge asked Appellant what electronic device Appellant used to communicate with BM. Appellant replied, "Via my laptop, sir." Appellant would later agree that the 14 video recordings at issue were found on his laptop computer.

### 2. Law

It is well-settled law that an unconditional guilty plea generally waives any objection related to the factual question of guilt. Rule for Courts-Martial (R.C.M.) 910(j); *see also United States v. Mooney*, 77 M.J. 252, 254 (C.A.A.F.

2018). "Objections that do not relate to factual issues of guilt are not covered by this bright-line rule, but the general principle still applies: [a]n unconditional guilty plea generally 'waives all defects which are neither jurisdictional nor a deprivation of due process of law.'" *United States v. Schweitzer*, 68 M.J. 133, 136 (C.A.A.F. 2009) (quoting *United States v. Rehorn*, 26 C.M.R. 267, 268–69 (C.M.A. 1958)). The United States Court of Appeals for the Armed Forces (CAAF) has observed, "[w]hile the waiver doctrine is not without limits, those limits are narrow and relate to situations in which, on its face, the prosecution may not constitutionally be maintained." *United States v. Bradley*, 68 M.J. 279, 282 (C.A.A.F. 2010) (citations omitted).

Consequently, an appellant who has entered an unconditional guilty plea ordinarily may not raise on appeal an error previously waived at trial. *United States v. Chin*, 75 M.J. 220, 222 (C.A.A.F. 2016) (citing *United States v. Campos*, 67 M.J. 330, 332–33 (C.A.A.F. 2009); *United States v. Gladue*, 67 M.J. 311, 313 (C.A.A.F. 2009)). However, this "ordinary" rule does not apply to statutory review by a military court of criminal appeals (CCA) under Article 66(c), UCMJ. *Id.* "Article 66(c) empowers CCAs to consider claims . . . even when those claims have been waived." *Id.* (quoting *United States v. Chin*, No. ACM 38452, 2015 CCA LEXIS 241, at *9–11 (A.F. Ct. Crim. App. 12 Jun. 2015) (unpub. op.), *aff'd,* 75 M.J. 220 (C.A.A.F. 2016)). This is because CCAs maintain an "affirmative obligation to ensure that the findings and sentence in each such case are 'correct in law and fact . . . and should be approved.'" *Id.* at 223 (quoting *United States v. Miller*, 62 M.J. 471, 472 (C.A.A.F. 2006) (alteration in original)).

"If an appellant elects to proceed with Article 66, UCMJ, review . . . . the CCAs are required to assess the entire record to determine whether to leave an accused's waiver intact, or to correct the error." *Id.* (citation omitted). This requirement does not mean an unconditional guilty plea is without meaning or effect. *Id.* "Waiver at the trial level continues to preclude *an appellant* from raising the issue" on appeal, *id.* (citing *Gladue*, 67 M.J. at 313–14), and an "unconditional guilty plea continues to serve as a factor for a CCA to weigh in determining whether to nonetheless disapprove a finding or sentence." *Id.*

### 3. Analysis

At the time Appellant was ordered to unlock his electronic devices, the CAAF had not decided *United States v. Mitchell*, 76 M.J. 413 (C.A.A.F. 2017); however, *Mitchell* was decided before Appellant was arraigned and is factually similar to the conduct of the AFOSI agents after Appellant invoked his right to counsel. In *Mitchell*, the appellant's phone had been seized in accordance with a valid search authorization. *Id.* at 416. However, after being advised of his rights under custodial interrogation, the appellant invoked his right to counsel. *Id.* Law enforcement officials then asked the appellant to input the

passcode to unlock his phone, and the appellant complied. *Id.* The CAAF concluded that the Government violated the appellant's Fifth Amendment[6] right to counsel as protected by *Edwards v. Arizona*, 451 U.S. 477 (1981), when he was asked to enter his phone's passcode in the absence of counsel. *Mitchell*, 76 M.J. at 415.

Appellant contends that because an AFOSI agent unlawfully made Appellant unlock his phone, the AFOSI agents should never have been allowed to use the evidence on his phone to build the case against him. Although AFOSI agents did not find contraband on Appellant's phone, they did discover a picture of him with his shirt raised. Appellant claims AFOSI agents used this photograph to corroborate information they obtained from BM and, consequently, the AFOSI's investigation materially benefited from the illegal search of Appellant's phone.

Even if we assume Appellant's claim of error reaches his laptop computer where the 14 charged images were found, we nonetheless decline to grant relief. By his unconditional plea of guilty, Appellant waived the issues of the invocation of the right to counsel and the lawfulness of the orders to unlock his phone and other devices and to disable their security settings. R.C.M. 910(j). Appellant acknowledged on the record that he was not forced to agree to that term of the PTA, and this court finds no reason to question Appellant's voluntary waiver. Furthermore, the Government did not offer the LOR that Colonel KB served on Appellant as evidence at the sentencing hearing as part of the personnel records of the accused. *See* R.C.M. 1001(b)(2). Thus, we find Appellant was not prejudiced by any error or action by a Government official.[7]

Further, we conclude Appellant's claims are neither jurisdictional nor was Appellant denied the due process of law, and thus are waived insofar as our consideration of the factual question of his guilt on appeal. *See* R.C.M. 910(j); *Schweitzer*, 68 M.J. at 136. We have determined to leave Appellant's waiver intact. *See Chin,* 75 M.J. at 222.

## B. Conditions of Post-Trial Confinement

For the first time on appeal, Appellant urges this court to find he was subjected to impermissible confinement conditions in violation of Article 55, UCMJ, and the Eighth Amendment. Appellant also contends the conditions

---

[6] U.S. CONST. amend. V.

[7] Based on our review of the record, we need not decide the prejudicial impact of Colonel KB's 11 January 2017 reprimand of Appellant for disobeying orders to unlock his devices after Appellant asked for legal counsel, particularly the portion that reads, "[m]ake no mistake, these were lawful orders from properly appointed military magistrates . . . ."

warrant sentencing relief under this court's Article 66(c), UCMJ, authority to approve only so much of a sentence that, based on the entire record, should be approved. We are not persuaded.

**1. Additional Background**

After the conclusion of Appellant's sentencing hearing on 6 November 2018, Appellant waived his right to submit matters in clemency on 27 February 2019, and the convening authority took action the next day. In his appeal, Appellant submitted a sworn declaration and asked this court to reduce his sentence because he did not receive proper medical treatment for an injury that occurred in December 2018 when he was confined at the Naval Consolidated Brig in Charleston, South Carolina. Appellant did not raise a claim of improper medical treatment to the convening authority when he waived clemency.

Appellant explains in his declaration that near the end of December, another inmate stepped on his foot during a game of flag football, causing significant bruising to his large toe and toenail. Over the next two to three weeks his toenail swelled and became painful. It discharged pus and became detached from the nail bed. On 14 January 2019, Appellant reported to sick call for a medical evaluation. A medical staff member concluded that no action was needed. Appellant requested the nail be removed and that the issue be raised to a supervisor. The supervisor refused to remove the nail, applied an antiseptic, and gave Appellant instructions to return to sick call should the issue worsen. Later that evening, the nail completely detached from the nail bed when Appellant removed his boots and socks.

Approximately three weeks later, Appellant returned to sick call to have his condition reevaluated because the nail was regrowing over the exposed nail bed in an unusual manner and with significant discoloration, and caused pain when Appellant donned his socks and boots each morning. Appellant was again told by medical personnel that no action was needed and to return to sick call if additional symptoms or issues developed. In his 3 September 2019 declaration to this court, Appellant states that in the months since the onset of the issue, he is unable to put on socks and shoes without "slow and methodical effort." His nail has yet to regenerate fully and it remains an unusual color and form.

In response to Appellant's sworn statement, the Government provided a sworn declaration from a legal officer at the Naval Consolidated Brig. The declaration states that Appellant served a period of confinement at the facility from 28 November 2018 until 11 August 2019, and he sustained an injury to his toe during a recreational activity. After a medical evaluation, a member of the medical staff determined the best course of action was to let the nail remain intact until it fell off spontaneously because removing the nail would have left

Appellant's toenail matrix exposed, which could increase the chances of an injury or infection. An antiseptic solution was administered "to decrease the amount of surface pathogens to help prevent further infection." Appellant was advised he could cover the area with a plastic bandage to prevent the nail from catching on his socks. The medical staff member concluded there was no mandate to remove Appellant's toenail. The declaration explained that in the opinion of the medical staff member, toenails can grow back abnormally or discolored after a traumatic event to the nail bed and it may take months or years for the nail to fully grow. Lastly, the declaration asserted that a review of Appellant's prisoner record did not contain any requests for redress or grievances.

**2. Law**

"Both the Eighth Amendment and Article 55, UCMJ, prohibit cruel and unusual punishment. In general, we apply the Supreme Court's interpretation of the Eighth Amendment to claims raised under Article 55, UCMJ, except where legislative intent to provide greater protections under Article 55, UCMJ, is apparent." *United States v. Gay*, 74 M.J. 736, 740 (A.F. Ct. Crim. App. 2015) (citing *United States v. Avila*, 53 M.J. 99, 101 (C.A.A.F. 2000)), *aff'd*, 75 M.J. 264 (C.A.A.F. 2016).

"[T]he Eighth Amendment prohibits two types of punishments: (1) those 'incompatible with the evolving standards of decency that mark the progress of a maturing society' or (2) those 'which involve the unnecessary and wanton infliction of pain.'" *United States v. Lovett*, 63 M.J. 211, 215 (C.A.A.F. 2006) (quoting *Estelle v. Gamble*, 429 U.S. 97, 102–03 (1976)). A violation of the Eighth Amendment is shown by demonstrating:

> (1) an objectively, sufficiently serious act or omission resulting in the denial of necessities; (2) a culpable state of mind on the part of prison officials amounting to deliberate indifference to [appellant]'s health and safety; and (3) that [appellant] "has exhausted the prisoner-grievance system . . . and that he has petitioned for relief under Article 138, UCMJ, 10 U.S.C. § 938 [2000]."

*Id.* (third and fourth alterations in original) (footnotes omitted) (quoting *United States v. Miller*, 46 M.J. 248, 250 (C.A.A.F. 1997)).

The CAAF has emphasized that "[a] prisoner must seek administrative relief prior to invoking judicial intervention to redress concerns regarding post-trial confinement conditions." *United States v. Wise*, 64 M.J. 468, 469 (C.A.A.F. 2007) (citing *United States v. White*, 54 M.J. 469, 472 (C.A.A.F. 2001)). "This requirement 'promot[es] resolution of grievances at the lowest possible level [and ensures] that an adequate record has been developed [to aid appellate review].'" *Id.* at 471 (alterations in original) (quoting *Miller*, 46 M.J. at 250).

Except under some unusual or egregious circumstance, an appellant must demonstrate he or she has exhausted the prisoner grievance process provided by the confinement facility and has petitioned for relief under Article 138, UCMJ, 10 U.S.C. § 938. *White,* 54 M.J. at 472 (citation omitted).

Under Article 66(c), UCMJ, we have broad authority and the mandate to approve only so much of the sentence as we find "correct in law and fact and determine, on the basis of the entire record, should be approved." *See also United States v. Tardif*, 57 M.J. 219, 223 (C.A.A.F. 2002) (observing that the "legislative history of Article 66 reflects congressional intent to vest broad power in the Courts of Criminal Appeals"). The scope of our Article 66(c), UCMJ, authority to consider claims of post-trial confinement conditions "is limited to consideration of these claims as part of our determination of sentence appropriateness." *United States v. Towns*, 52 M.J. 830, 833 (A.F. Ct. Crim. App. 2000) (citation omitted), *aff'd*, 55 M.J. 361 (C.A.A.F. 2001). "It is also limited to claims based on post-trial treatment that occurs prior to the action of the convening authority and which is documented in the record of trial." *Id.* (citing Article 66(c), UCMJ).

### 3. Analysis

#### a. Article 55, UCMJ, and the Eighth Amendment

We conclude that even if the facts, as asserted by Appellant in his declaration, are true, Appellant has not met his burden to establish prison officials failed to administer proper medical treatment, and, thus, grounds for relief.[8]

Article 55, UCMJ, prohibits infliction of "[p]unishment by flogging, or by branding, marking, or tattooing on the body, or any other cruel or unusual punishment." The Eighth Amendment prohibits "deliberate indifference to serious medical needs of prisoners," whether manifested by prison guards "intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976) (citation omitted). However, "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Id.* at 106. "Deliberate indifference" requires that the responsible official must be aware of an excessive risk to an inmate's health or safety and disregard that

---

[8] Having applied the decisional framework announced in *United States v. Ginn*, 47 M.J. 236, 248 (C.A.A.F. 1997), for evaluating conditions of post-trial confinement, and considered the entire record, we find we can resolve the issues raised by Appellant without additional factfinding. *See United States v. Fagan*, 59 M.J. 238, 242 (C.A.A.F. 2004).

risk. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842 (citation omitted). However, "prison officials who [lack] knowledge of a risk cannot be said to have inflicted punishment." *Id.* at 844.

Apart from Appellant's factual declaration, we find no basis for the assertions made by Appellant's counsel on behalf of Appellant that (1) Appellant's "serious and potentially disabling medical issue—an infected toe—was brushed aside by brig medical personnel and not taken seriously;" (2) "[t]he brig sick bay officials' lack of concern led to a long-term infection and permanent damage to the digit that continues to this day;" and that (3) "[t]here is no explanation for the conditions under which Appellant was kept except that the confinement facility officials deliberately and willfully disregarded Appellant's well-being." The most Appellant shows from the post-trial declarations is that the treatment of his injured toe was aimed at preventing infection. Appellant has not shown that either alternative or additional medical interventions would have restored his health to the same condition before the injury happened.

In the present case, the information provided by Appellant in his appeal lacks evidence that prison officials were aware of a substantial risk of serious harm to Appellant's health or safety and disregarded that risk. We find that Appellant has not presented evidence to establish wrongful intent, namely, that any official failed to properly administer treatment for the purpose of increasing Appellant's suffering or the severity of his sentence. Appellant has not shown conduct of prison officials that rises to the level of "deliberate indifference to serious medical needs of prisoners" proscribed by the Eighth Amendment whether manifested by prison guards "intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle*, 429 U.S. at 104–05. Moreover, a review of Appellant's case does not reveal any information to suggest that Appellant attempted to use a grievance process to address his complaint. *See Wise*, 64 M.J. at 469; *White*, 54 M.J. at 471.

We find Appellant's post-trial claims do not demonstrate circumstances warranting relief under Article 55, UCMJ, or the Eighth Amendment. Even if the facts as asserted by Appellant are true, there is insufficient evidence to objectively conclude that a sufficiently serious act or omission occurred which resulted in the denial of necessities. *See Lovett*, 63 M.J. at 215. The information falls far short of wrongful intent, namely, a culpable state of mind of an identifiable official which constituted deliberate indifference to Appellant's health and safety. *See id.* Finally, the record does not provide evidence that Appellant attempted to use a grievance process to address complaints of mistreatment.

*See id.* Accordingly, Appellant does not warrant relief under Article 55 or the Eighth Amendment and we conclude his sentence is correct in law.

### b. Appropriateness of Sentence

Having resolved Appellant's Article 55 and Eighth Amendment claims, we next consider if our review of whether Appellant's sentence should be approved "on the basis of the entire record," Article 66(c), UCMJ, permits or precludes our consideration of the post-trial confinement conditions Appellant presents for the first time on appeal. We conclude Article 66(c) limits our review of the appropriateness of the sentence to the record and thus precludes consideration of Appellant's statements of fact about those conditions.

In *United States v. Jessie*, the CAAF observed that some of the court's precedents hold that CCAs "may consider only what is in the record" when reviewing a sentence under Article 66(c). 79 M.J 437, 440 (C.A.A.F. 2020) (citation omitted). The CAAF noted that the leading case for these precedents is *United States v. Fagnan*, 30 C.M.R. 192 (C.M.A. 1961), in which the appellant asked the Army Board of Review to reject his punitive discharge based on a favorable psychiatric assessment and a favorable report regarding his conduct while in confinement. *Jessie*, 79 M.J. at 441 (citing *Fagnan*, 30 C.M.R. at 193). The Board of Review declined to consider these documents, explaining that because the submission "concerns matters which occurred months after the convening authority acted upon the sentence and forwarded the record of trial, it is not a part of the record subject to review under Article 66." *Id.* (quoting *Fagnan*, 30 C.M.R. at 193). The United States Court of Military Appeals, the predecessor to the CAAF, affirmed, holding that under Article 66(c), UCMJ, "the board of review is expressly restricted by Congress to the 'entire record' in assessing the appropriateness of the sentence." *Id.* (quoting *Fagnan*, 30 C.M.R. at 194). The *Jessie* court reiterated the reasoning in *Fagnan* that "if military justice proceedings are to be 'truly judicial in nature,' then the appellate courts cannot 'consider information relating to the appropriateness of sentences when it has theretofore formed no part of the record.'" *Id.* (quoting *Fagnan*, 30 C.M.R. at 195).

In *Jessie*, our superior court concluded that "*Fagnan* established a clear rule that the CCAs may not consider anything outside of the 'entire record' when reviewing a sentence under Article 66(c), UCMJ." *Id.* (citation omitted). Specifically in regard to conditions of post-trial confinement, "[t]he rule in *Fagnan* does not preclude the CCAs from considering prison conditions when reviewing a sentence under Article 66(c), UCMJ, *if the record contains information about those conditions.*" *Id.* at 441–42 (emphasis added); *see also id.* at 444 n.10 ("Because both the sentence appropriateness and correctness in law determinations require a decision based upon the 'entire record,' we need not

determine whether posttrial confinement conditions fall under one or both provisions.").

Here, the "entire record"[9] contains no information about the conditions of Appellant's post-trial confinement. Although we exercised our authority to consider outside-the-record matters to determine if Appellant's sentence is correct in law under Article 55, UCMJ, and the Eighth Amendment, *see United States v. Erby*, 54 M.J. 476, 478 (C.A.A.F. 2001), we are precluded from considering Appellant's statement of facts about these conditions to determine if his sentence is appropriate and "should be approved" as part of our Article 66(c) review. *Jessie*, 79 M.J. at 441. In *United States v. Gay*, the CAAF affirmed a decision of this court that reduced an appellant's sentence under Article 66(c) because prison officials, without justification, had made him serve part of his sentence in maximum security solitary confinement. 75 M.J. 264, 266 (C.A.A.F. 2016). However, information about these conditions was part of the record of trial because the appellant had requested additional confinement credit when he complained about the conditions to the convening authority. *Id.* at 265–66. Unlike *Gay*, neither the record of trial nor the matters attached to Appellant's record of trial mentions the conditions Appellant raises for the first time after the convening authority took action in Appellant's case.

It may seem incongruous to consider outside-the-record matters to evaluate Appellant's Article 55 and Eighth Amendment claims, and then not consider those matters in this court's sentence appropriateness review under Article 66(c). Nonetheless, our superior court has declined to further erode precedents like *Fagnan*, noting, "[w]e see nothing in the statutory text [of Article 66(c)] requiring special treatment for all appeals raising statutory or constitutional claims." *Jessie*, 79 M.J. at 444. The CAAF further rejected the contention "that appellants should have the right to supplement the record whenever they raise claims of constitutional or statutory violations."[10] *Id.* at 443.

We depart from our esteemed colleague concurring in the result in regard to the position that was taken by Chief Judge Johnson in *United States v. Matthews*, No. ACM 39593, 2020 CCA LEXIS 193 (A.F. Ct. Crim. App. 2 Jun. 2020)

---

[9] *See* R.C.M. 1103(b)(2) (contents of the record) and R.C.M. 1103(b)(3) (matters attached to the record). In addition, the "entire record" includes briefs and arguments that appellate counsel and an appellant personally present regarding matters that are already in the record of trial, R.C.M. 1103(b)(2), or have been attached to the record of trial under R.C.M. 1103(b)(3). *See Jessie*, 79 M.J. at 440–41 (citing *United States v. Healy*, 26 M.J. 394, 396 (C.M.A. 1988)).

[10] "The 'entire record' restriction . . . applies equally whether the CCA is reviewing a sentence's correctness in law, reviewing a sentence's correctness in fact, or determining whether a sentence should be approved." *Jessie*, 79 M.J. at 444 (footnote omitted).

(unpub. op.) (J. Johnson, C.J., concurring in the result). Like this case, the *Matthews* appellant raised his Article 55, UCMJ, and Eighth Amendment claims for the first time on appeal and based them on material outside the original record of trial. *Matthews*, unpub. op. at *12. Chief Judge Johnson simply concluded that the question of this court's authority to grant sentence appropriateness relief under Article 66(c), UCMJ, for claimed violations of Article 55, UCMJ, and the Eighth Amendment was not before the CAAF in *Jessie*, and thus "the CAAF's position on this point is undecided and unclear." *Matthews*, unpub. op. at *16–17 (J. Johnson, C.J., concurring in the result). In our view, the CAAF's majority opinion was resolute and clear.

Following the court's Article 66(c) mandate to approve only so much of a sentence that, based on "the entire record, should be approved," we conclude the record contains no support to grant sentencing relief on the basis of Appellant's claims about the conditions of post-trial confinement.

### III. CONCLUSION

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the findings and the sentence are **AFFIRMED**.[11]

MEGINLEY, Judge (concurring in the result):

I agree with the majority in that Appellant is not entitled to relief for cruel or unusual conditions of post-trial confinement in violation of the Eighth Amendment[1] or Article 55, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 855. Nor do I believe the conditions Appellant describes render his sentence inappropriately severe, warranting relief under Article 66(c), UCMJ, 10 U.S.C. § 866(c).

However, I disagree with the premise that we are precluded from considering the appropriateness of Appellant's sentence pursuant to Article 66, UCMJ, 10 U.S.C. § 866, in a case such as this where Appellant raises his Eighth Amendment and Article 55, UCMJ, claims for the first time on appeal, and supports his claim with material that is outside of the original record of trial. I agree with the observations made by Chief Judge Johnson in his concurring

---

[11] Although not raised by the parties, we note an error in the CMO where the charged article is incorrectly identified as Article "120" rather than "120c." We direct the publication of a corrected CMO to remedy this error.

[1] U.S. CONST. amend. VIII.

opinion in *United States v. Matthews*, No. ACM 39593, 2020 CCA LEXIS 193 (A.F. Ct. Crim. App. 2 Jun. 2020) (unpub. op.), in his assessment of our superior court's recent decision in *United States v. Jessie*, 79 M.J. 437 (C.A.A.F. 2020):

> Article 66, UCMJ, is the fundamental source of this court's authority to review any issue, to include alleged violations of the Eighth Amendment and Article 55, UCMJ. It does seem incongruous (to borrow the majority's term) to find that, under *Jessie*, we have jurisdiction to review alleged violations of the Eighth Amendment and Article 55, UCMJ, based on material outside the original record of trial, but to find we lack jurisdiction to consider such materials for the purpose of "affirm[ing] only such findings of guilty and the sentence . . . as [we] find correct in law and fact and determine, on the basis of the entire record, should be approved"—which is our fundamental charge and mandate in accordance with the text of Article 66 itself. *See United States v. Gay*, 75 M.J. 264, 268 (C.A.A.F. 2016).

*Matthews*, unpub. op. at \*17–18 (J. Johnson, C.J., concurring in the result).

I am troubled by the precedent that will be set if a hard-line rule is established that Courts of Criminal Appeals cannot consider anything outside of the record for post-trial issues unless an Eighth Amendment or Article 55 issue is raised. Since *United States v. Fagnan*, 30 C.M.R. 192 (C.M.A. 1961), was decided, prison and confinement systems have greatly evolved, post-trial processing has undergone a massive transformation, and most importantly, appellants have changed. The Department of Defense is coming to terms with the racial and gender disparity issues that have existed in our military justice system for quite some time. We have also learned to recognize the need to make accommodations in our confinement systems for certain segments of our military population which may have been marginalized or ignored, such as those who may identify as gay, lesbian, or transgender.

How these evolving issues will play out in post-punishment context is unknown. Yet, the time to include post-trial matters in the record is nearly irrelevant; gone are the days when an appellant could be in confinement for months before action. Now, depending on how quickly a legal office can process a record, entry of judgment can take place in a matter of days.

Nor do I believe in the notion we could, or should, require our Airmen to seek relief for these issues solely in the federal court system. We have an obligation to be prepared to consider non-traditional post-trial confinement issues as part of our charge. Courts of Criminal Appeals need flexibility in post-trial submissions so that we can continue to reconcile injustices and shortcomings in order to continue to adapt to our ever-changing military population. I agree

with the point made by Judge Sparks in his dissenting opinion in *Jessie*, noting:

> The majority is correct that Article 66, UCMJ, instructs the lower courts to review issues "on the basis of the entire record." But it also entrusts the lower court with the weightier responsibility of ensuring an accused's sentence is "correct in law." Confining our review only to the existing record, without exception, would limit the lower court's ability to do this.

*Jessie*, at 448 (Sparks, J., dissenting).

By closing the door on non-Eighth Amendment and Article 55 claims, we are perhaps closing the door on due process and First Amendment[2] issues (as seen in *Jessie*), and other matters we simply cannot anticipate—matters that were not envisioned when *Fagnan* was decided.

FOR THE COURT

*Carol K. Joyce*

CAROL K. JOYCE
Clerk of the Court

---

[2] U.S. CONST. amend. I.