Chief Judge STUCKY
delivered the opinion of the Court.
We address today the Fifth Amendment limits on asking a suspect to unlock his phone when the device has been seized pursuant to a valid search and seizure authorization.[1] Because Appellee had previously invoked his right to counsel, we hold that the Government violated his Fifth Amendment rights as protected by Edwards v. Arizona, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), when agents asked him in the absence of counsel to enter the phone’s passcode. Pursuant to the plain language of Military Rule of Evidence (M.R.E.) 305(c)(2), the contents of the phone must therefore be suppressed.
I. Background
Sergeant Edward J. Mitchell II (Appellee) is charged with many offenses, including using calls, text messages, and lewd online postings to harass his wife, in violation of a no-contact order issued after she made an allegation of sexual assault.[2] The facts relevant to this appeal occurred after Appellee’s wife told military police that Appellee was calling and texting her with numbers artificially created by applications on his phone or computer (spoofing), and had posted nude photographs of her online and in cell phone communication applications, Whisper and Kik.
Staff Sergeant (SSG) Knight, a member of Appellee’s unit, escorted him to a military police station in Fort Hood, Texas, to discuss the allegations, where Investigator Tsai informed Appellee of his rights. Appellee invoked his right to counsel at approximately 10:50 a.m. Appellee’s platoon leader signed a “Receipt for Pre-Trial/Post Trial Prisoner or Detained Person,” and SSG Knight escorted Appellee back to his unit, where he remained in the company area and accessed both his Kyocera phone and iPhone.
*416 Meanwhile, Investigator Tsai obtained a verbal authorization to seize and search various electronic media belonging to Appellee, including cell phones, for “evidence of spoofing calls, text messages or other similar communications ... and other similar software capable of allowing communications in a spoofing ... fashion.” Appellee’s commander learned that investigators were on their way, and a member of Appellee’s company was directed to find and bring Appellee to the commander’s office. When Investigators Tsai and Carlton arrived between 1:00 and 1:30 p.m., little more than two hours after the original request for counsel, Appellee was waiting in the office with his commander.
In the office, Investigator Tsai informed Appellee of the verbal search and seizure authorization, and Appellee questioned the validity- of verbal authorizations, asking to see a written one. Around this time, the commander left the office. Investigator Tsai told Appellee that verbal authorizations are valid and asked if Appellee had any cell phones on his person. Appellee then handed an iPhone to the investigators. Investigator Tsai saw that the iPhone was protected by a numeric passcode, and asked Appellee to provide it. Appellee refused.
Investigator Tsai then handed the phone back to Appellee and asked him to unlock it, saying: “if you could unlock it, great, if you could help us out. But if you don’t, we’ll wait for a digital forensic expert to unlock it.” Neither investigator knew at the time that Appellee’s iPhone had two finger/thumb prints stored, and could have potentially been opened using “Touch ID capabilities.” Appel-lee then entered his passcode and unlocked the phone: “[Appellee] was also required to permanently disable the cell phone’s pas-scode protection. In order to do so, [he] was required to access the phone’s settings and enter his numeric passcode (PIN) two more times to fully disable the phone’s protections.” (Footnote omitted.)
After Appellee permanently unlocked and surrendered his iPhone, investigators directed Appellee to his vehicle and barracks room to execute the rest of the search and seizure authorization. In Appellee’s room, investigators seized Appellee’s computer, and asked him to provide the password. He refused, and the investigators did not press him further.
Following a defense motion to suppress, the military judge held that the Government had violated Appellee’s Fifth Amendment right against self-incrimination and his Edwards right to counsel, and suppressed “[t]he iPhone at issue and any evidence derived therefrom.”[3] The Government appealed pursuant to Article 62, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 862 (2012). The United States Army Court of Criminal Appeals (CCA) held that the military judge’s findings of fact were ambiguous, set aside the ruling suppressing the evidence, and remanded, ordering the military judge to make detailed findings. United States v. Mitchell, No. ARMY MISC 20150776, 2016 CCA LEXIS 179, 2016 WL 1128111 (A. Ct. Crim. App. Mar. 18, 2016). In her second order, the military judge clarified, inter alia, that Appel-lee was in custody at the police station and in his commander’s office, although not during the intervening time, and again suppressed the iPhone and its contents. After the Government again appealed, the CCA upheld the order. United States v. Mitchell, No. ARMY MISC 20150776, 2016 WL 4629149 (A. Ct. Crim. App. Aug. 29, 2016) (per curiam). The CCA later denied a motion for reconsideration and suggestion for consideration en banc. United States v. Mitchell, No. ARMY MISC 20150776 (A. Ct. Crim. App. Oct. 24, 2016) (order). The Government then certified the case for our review.
II, Analysis
The Fifth Amendment provides that “[n]o person .,. shall be compelled in any criminal case to be a witness against himself.” U.S. Const, amend, V. Because “[t]he circumstances surrounding in-custody interrogation can operate very quickly to overbear the will of one merely made aware of his privilege by his interrogators.... the right to have counsel present at the interro *417 gation is indispensable to the protection of the Fifth Amendment privilege.” Miranda v. Arizona, 384 U.S. 436, 469, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
Once a suspect in custody has “expressed his desire to deal with the police only through counsel, [he] is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication.” Edwards, 451 U.S. at 484-85, 101 S.Ct. 1880; see M.R.E. 306(e)(3). “In every case involving Edwards, the courts must determine whether the suspect was in custody when he requested counsel and when he later made the statements he seeks to suppress." Maryland v. Shatzer, 569 U.S. 98, 111, 130 S.Ct. 1213, 175 L.Ed.2d 1045 (2010). We have previously recognized that “Edwards clearly applies to the military.” United States v. Dock, 40 M.J. 112, 115 (C.M.A. 1994).
We review a military judge’s ruling on a motion to suppress for an abuse of discretion and consider the evidence in the light most favorable to the party that prevailed at trial. United States v. Rodriguez, 60 M.J. 239, 246-47 (C.A.A.F. 2004). “A military judge abuses [her] discretion if [her] findings of fact are clearly erroneous or [her] conclusions of law are incorrect.” United States v. Olson, 74 M.J. 132, 134 (C.A.A.F. 2015) (internal quotation marks omitted) (citation omitted). These standards also apply to interlocutory appeals under Article 62, UCMJ. United States v. Michael, 66 M.J. 78, 80 (C.A.A.F. 2008).
Under the circumstances presented, we conclude that the Government violated Appellee’s Fifth Amendment right to counsel as protected by Miranda and Edwards. The Government does not contest that Appellee was in custody when he invoked his right to counsel while detained at the military police station. It is almost equally clear that Appel-lee was in custody in his commander’s office when investigators asked him to unlock his iPhone. “Two discrete inquiries are essential to the determination: first, what were the circumstances surrounding the interrogation; and second, given those circumstances, would a reasonable person have felt he or she was not at liberty to terminate the interrogation and leave.” Thompson v. Keohane, 516 U.S. 99, 112, 116 S.Ct. 457, 133 L.Ed.2d 383 (1995). “[T]he ultimate inquiry is simply whether there is a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest.” California v. Beheler, 463 U.S. 1121, 1125, 103 S.Ct. 3517, 77 L.Ed.2d 1275 (1983) (internal quotation marks omitted) (citation omitted). Courts evaluate:
(1) whether the person appeared for questioning voluntarily; (2) the location and atmosphere of the place in which questioning occurred ,.. [;] (3) the length of the questioning ...[;][ (4) ] the number of law enforcement officers present at the seene[;] and [ (6) ] the degree of physical restraint placed upon the suspect.
United States v. Chatfield, 67 M.J. 432, 438 (C.A.A.F. 2009) (internal quotation marks omitted) (citing Oregon v. Mathiason, 429 U.S. 492, 495, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977); United States v. Mittel-Carey, 493 F.3d 36, 39 (1st Cir. 2007)).
When investigators confronted Appellee to execute the search and seizure authorization, he had been in custody less than two hours earlier at a military police station, where he originally invoked his right to counsel.[4] Pursuant to his commander’s orders, Appellee was taken to his commander’s office for the express purpose of allowing the agents to again speak with him and execute the authorization. Thus, (1) Appellee did not appear voluntarily and (2) the “location and atmosphere of the place” suggested that Appellee was again in custody. Although (3) the length of the questioning itself was not particularly remarkable, (4) the Government had two law enforcement officers on the scene, backed by the authority of Appellee’s commander. Finally,. (5) although Appellee was not handcuffed, he was restrained just as completely by an environment in which both his command and the Government investigators re *418 quired him to remain in place. Under these circumstances, Appellee was subject to “ ‘restraint on freedom of movement’ of the degree associated with a formal arrest,” and was therefore in custody. Beheler, 463 U.S. at 1125, 103 S.Ct. 3617 (citation omitted).
In addition to being in custody, Ap-pellee was also subject to interrogation. Interrogation of a suspect includes “not only ... express questioning, but also ... any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect.” Rhode Island v. Innis, 446 U.S. 291, 301, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980) (footnote omitted); Edwards, 461 U.S. at 486-87, 101 S.Ct. 1880 (applying the Innis standard).
After investigators seized Appellee’s iPhone and saw that it was passcode protected, they immediately “asked [him] if he could provide the PIN to unlock the phone.” When Appellee refused, the agents handed his phone back to him and asked him to “help [them] out” by entering the passcode himself. Appellee “eventually complied with the nature of their request” and permanently unlocked his phone for the agents.
This line of questioning qualifies as interrogation. The agents’ initial request— “can you give us your PIN?”—is an express question, reasonably likely to elicit an incriminating response. The Government contends that a request for consent to search is not an interrogation, citing this Court’s reasoning in United States v. Frazier that “such requests are not interrogations and the consent given is ordinarily not a statement.” 34 M.J. 135, 137 (C.M.A. 1992). But asking Appellee to state his passcode involves more than a mere consent to search; it asks Appellee to provide the Government with the passcode itself, which is incriminating information in the Fifth Amendment sense, and thus privileged. “The privilege ... not only extends to answers that would in themselves support a conviction ,.. but likewise embraces those which would furnish a link in the chain of evidence needed to prosecute....” Hoffman v. United States, 341 U.S. 479, 486, 71 S.Ct. 814, 96 L.Ed. 1118 (1951); see also United States v. Hubbell, 530 U.S. 27, 37-38, 120 S.Ct. 2037, 147 L.Ed.2d 24 (2000).
When the agents switched tactics and succeeded in getting Appellee to enter his pas-scode rather than verbally provide it, that request was part of the same basic effort to convince Appellee to provide the information necessary for the Government to access and search the contents of his phone, and to help prove that he himself had the same ability (which also extends beyond a mere consent to search).[5] By asking Appellee to enter his passcode, the Government was seeking an “answer[ ] ... which would furnish a link in the chain of evidence needed to prosecute” in the same way that Hoffman and Hubbell used the phrase. Not only did the response give the Government access to direct evidence as in Hubbell, it also constituted direct evidence as in Hoffman. See Hubbell, 530 U.S. at 39-40, 120 S.Ct. 2037 (“The documents were produced before a grand-jury_ The use of those sources of information eventually led to the return of an indictment_”); Hoffman, 341 U.S. at 488, 71 S.Ct. 814 (“[T]ruthful answers ... to these questions might have disclosed that he was engaged in such proscribed activity.”). As even the dissent concedes, Appellee’s response constitutes an implicit statement “that [he] owned the phone and knew the passcode for it.” Mitchell, 76 M.J. at 424 (Ryan, J., dissenting). And the fact that Investigators Tsai and Carlton could have testified to this act confounds any contention that “entering the passcode—was not incriminating.” Id. at 424.
Viewed as a whole, the Government’s inquiries constituted “not only ... express questioning, but also ... words or actions ... that the police should know are reasonably likely to elicit an incriminating response from the suspect.” Innis, 446 U.S. at 301, 100 S.Ct. 1682 (footnote omitted). Without the *419 benefit of counsel that he had requested, subjecting Appellee to a custodial interrogation endangered his Fifth Amendment privilege against self-incrimination and violated the protective rule created in Edwards. 451 U.S. at 484-85, 101 S.Ct. 1880. In light of this holding, we need not reach the question of whether the Government directly violated Appellee’s Fifth Amendment privilege against compelled self-incrimination. We thus do not address whether Appellee’s delivery of his passcode was “testimonial” or “compelled,” as each represents a distinct inquiry. Hiibel v. Sixth Judicial Dist. Court of Nev., 542 U.S. 177, 189, 124 S.Ct. 2451, 159 L.Ed.2d 292 (2004).
The dissent contends that the Fifth Amendment only protects testimonial communications, Mitchell, 76 M.J. at 422-24 (Ryan, J., dissenting), but we are enforcing the “prophylactic” Miranda right to counsel, and the “second layer of prophylaxis” established in Edwards,. both of which are constitutionally grounded measures taken to protect the core Fifth Amendment privilege. McNeil v. Wisconsin, 501 U.S. 171, 176-77, 111 S.Ct. 2204, 115 L.Ed.2d 158 (1991); accord Dickerson v. United States, 530 U.S. 428, 442-43, 120 S.Ct. 2326, 147 L.Ed.2d 405 (2000) (upholding Miranda against legislative challenge, but declining to hold that nothing besides Miranda will ever “suffice to satisfy constitutional requirements”).
Because Edwards forbids interrogation following the invocation of the Miranda right to counsel, not just interrogation that succeeds, 451 U.S. at 484-85, 101 S.Ct. 1880, it follows that those who seek Edwards protection do not need to establish that the interrogation produced or sought a testimonial statement in order to establish a violation. Rather, only interrogation itself must be established, and Appellee has demonstrated that entry of his passcode was an “incriminating response” that the Government should have known they were “reasonably likely to elicit.” Innis, 446 U.S. at 301, 100 S.Ct. 1682. Once an Edwards violation has been established, whether the incriminating response or derivative evidence will be suppressed is a question of remedy, not wrong. This interpretation of Edwards makes intuitive sense, because badgering an unrepresented suspect into granting access to incriminating information threatens the core Fifth Amendment privilege, even if the government already knows that the suspect knows his own password.
At the moment when interrogation occurred, the violation of Appellee’s rights under Edwards was complete. The only question that remains is the proper remedy. Under the plain language of the Military Rules of Evidence, any evidence derived from a violation of Edwards must be suppressed. “If a person suspected of an offense and subjected ‡0 custodial interrogation requests counsel, any statement made in the interrogation after such request, or evidence derived from the interrogation after such request, is inadmissible against the accused unless counsel was present for the interrogation.” M.R.E. 305(e)(2) (emphasis added).
The Government argues that the suppression of derivative evidence does not extend to violations of the Edwards rule, citing United States v. Patane, 542 U.S. 630, 124 S.Ct. 2620, 159 L.Ed.2d 667 (2004). In Patane, a three-justice plurality of the Supreme Court held that physical evidence discovered as a result of a suspect’s voluntary statements was admissible at trial, despite the failure to administer a Miranda warning. Id. at 634, 124 S.Ct. 2620. The Government reasons that if derivative evidence is not suppressed when Miranda ⅛ prophylactic protections are violated,[6] certainly the same rule applies when the Edwards “second layer of prophylaxis,” McNeil, 501 U.S. at 176, 111 S.Ct. 2204, is violated. But whatever the merits of the Government’s Patane argument, the Military Rules of Evidence expressly provide that “[a]n individual may claim the most favorable privilege provided by the Fifth Amendment to the United States Constitution, Article 31, or these rules.” M.R.E. 301(a) (emphasis added). And though the Government argues that the derivative evidence language in M.R.E. *420 306(c)(2) is the result of a scrivener’s error, those arguments are not persuasive.[7]
Furthermore, the Government has not established that the contents of Appel-lee’s phone are admissible because they would have inevitably been discovered. For the exception to apply, the Government must “demonstrate by a preponderance of the evidence that when the illegality occurred, the government agents possessed, or were actively pursuing, evidence or leads that would have inevitably led to the discovery of the evidence in a lawful manner.” United States v. Wicks, 73 M.J. 93, 103 (C.A.A.F. 2014) (internal quotation marks omitted) (citations omitted). The Government’s sole argument[8] is that it could have legally compelled Appel-lee to “press his finger to the phone and thereby unlock it” under United States v. Fagan, 28 M.J. 64, 69 (C.M.A. 1989) (“A servicemember simply has no basis to withhold fingerprints from military authorities [on Fourth Amendment grounds], provided that the manner of collecting them is reasonable.”); see also Doe v. United States, 487 U.S. 201, 210-11, 108 S.Ct. 2341, 101 L.Ed.2d 184 (1988) (the compulsion of physical, non-testimonial acts is not prohibited by the Fifth Amendment). But the record discloses no guarantee that -this procedure would have succeeded, and the Government therefore cannot demonstrate inevitability.
Although the iPhone “had Touch ID capabilities” and “the accused had two finger/thumbprints saved,” we cannot know whether Appellee had in fact turned fingerprint access “on” (as opposed to simply saving his fingerprints), because the phone’s entire security system is now permanently turned off. Moreover, the Government did not even learn about the possibility of fingerprint access until April 20, 2016, over fifteen months after the offending interrogation, We conclude that the Government’s eventual access to the phone’s contents was not inevitable, but rather “a matter of mere speculation and conjecture, in which [the Court] will not engage.” United States v. Maxwell, 45 M.J. 406, 422 (C.A.A.F. 1996).
Although the contents of Appellee’s phone are therefore inadmissible, Appellee’s physical iPhone should not have been suppressed, since it was seized pursuant to lawful authorization prior to the Edwards violation, or any other alleged Fifth Amendment violation. The phone itself does not constitute evidence derived from the illicit interrogation, and the possibility that a court-martial panel could impermissibly review the phone’s contents—since it is now permanently unlocked—could be overcome with an instruction forbidding such use. The military judge therefore abused her discretion in suppressing the phone itself.
III. Judgment
The decision of the United States Army Court of Criminal Appeals, to the extent that it affirmed the suppression of the contents of the iPhone, is hereby affirmed. To the extent that it affirmed the suppression of the physical phone, it is reversed. The record is returned to the Judge Advocate General of the Army for transmission to the convening authority for further proceedings.

. We heard oral argument in this case at the University of Notre Dame Law School, Notre Dame, Indiana, as part of the Court’s Project Outreach. This practice was developed as a public awareness program to demonstrate the operation of a federal court of appeals, and the military justice system.

. The facts stated in the text are drawn from the military judge's findings of fact. Both parties ask the Court to rely upon additional facts taken from the record rather than official findings, but we need not address these putative facts.

. The order also discussed various Fourth Amendment claims, and suppressed a book found in Appellee’s car on those grounds. That ruling is not before the Court.

. This break in custody was obviously less than the fourteen days required to terminate Edwards protection. Shatzer, 559 U.S. at 109-10, 130 S.Ct. 1213.

. Accordingly, we need not consider tire applicability of this Court's holding in United States v. Hutchins that a request for consent to search may in certain circumstances violate Edwards. 72 M.J. 294, 298-99 (C.A.A.F. 2013).

. Although originally referred to as a prophylactic rule, we recognize that Miranda actually announced a constitutional rule. Dickerson, 530 U.S. at 444, 120 S.Ct. 2326.

. The Government argues that the 2013 amendment resulting in the modern language "was not intended to have any substantive effect at all.” It is true that the Drafters’ Analysis does not mention Patane, and explains that M.R.E. 305(c)(2) was retitled "Fifth Amendment Right to Counsel" in order to "allow practitioners to quickly find the desired rule,” and that changes which "ensure that [the rule] addressed admissibility rather than conduct” were "not intend[ed] to change any result in any ruling on evidence admissibility.” Manual for Courts-Martial, United-States, Analysis of the Military Rules of Evidence app. 22 at A22-19 (Supp. 2012 ed.). But the analysis indicates in several places that changes were intended to be substantive, including explicit acknowledgment that "subsection (c)(3) provides more protection than the Supreme Court requires,” and that ”[t]he words 'after such request’ were added to subsection (c)(2)” for a substantive purpose. Id. In the absence of a more convincing argument that an entire phrase was accidentally inserted, this Court will thus apply the plain language of M.R.E. 305(c)(2).

. Notably, the Government does not argue that a digital forensic examiner could have bypassed Appellee's security, as Investigator Tsai claimed.