# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
POND, MORRIS, and PARKER[1]
Appellate Military Judges

**UNITED STATES, Appellant**
v.
**Private E2 NATHANIEL I. GILKEY**
**United States Army, Appellee**

ARMY MISC 20240455

Headquarters, U.S. Army Combined Arms Center and Fort Leavenworth
Scott A. Oravec, Military Judge (arraignment)
Alexander N. Pickands, Military Judge (motions)
Colonel Robert Manley, Staff Judge Advocate

For Appellant: Colonel Richard E. Gorini, JA; Major Patrick S. Barr, JA; Captain Vy T. Nguyen, JA (on brief); Colonel Richard E. Gorini, JA; Captain Vy T. Nguyen, JA (on reply brief).

For Appellee: Colonel Philip M. Staten, JA; Mr. Jonathan F. Potter, Esquire; Major Robert W. Rodriguez, JA; Captain Robert W. Duffie, JA (on brief).

4 March 2025

--------------------------------------------------------------------
MEMORANDUM OPINION AND ACTION ON APPEAL
BY THE UNITED STATES FILED PURSUANT TO
ARTICLE 62, UNIFORM CODE OF MILITARY JUSTICE
--------------------------------------------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

POND, Chief Judge:

This case is before us as an interlocutory appeal under Article 62, Uniform Code of Military Justice, 10 U.S.C. § 862 [UCMJ]. During a rehearing in this case,[2] the military judge suppressed evidence obtained from appellee's cell phone for

---

[1] Judge PARKER took final action in this case before her departure from the Court.

[2] This court previously set aside appellee's conviction from his first trial for judicial bias. *United States v. Gilkey*, ARMY 20210440, 2024 CCA LEXIS 46 (Army Ct. Crim. App. 19 Jan. 2024) (mem. op.).

violating his Article 31, UCMJ, rights. The military judge determined that special agents from Army Criminal Investigation Division (CID) should have advised appellee of his Article 31, UCMJ, rights *after* they lawfully seized appellee's phone but *before* they subsequently asked appellee if he needed the phone number for his defense attorney, resulting in appellee unlocking his cell phone and giving access to its entire contents. Consequently, the military judge suppressed evidence found on the cell phone and the government appealed the military judge's ruling to this court.

For the reasons set forth below, we conclude the military judge did not err and affirm his ruling.

## BACKGROUND

Appellee is charged with a variety of offenses stemming from his attempts to sexually exploit a fourteen-year-old whom he had previously known from school. During the course of CID's investigation, special agents lawfully seized appellee's cell phone (Phone 1). Appellee was later advised of, and waived, his rights under Article 31, UCMJ, and submitted to questioning. During this initial interview, CID asked appellee for the passcode to Phone 1. After none of the provided passcodes unlocked the phone, CID successfully asked appellee to unlock the phone using facial recognition. With the phone unlocked, CID conducted a manual review of Phone 1 which revealed suspected child sexual abuse material on multiple cell phone applications, including an application called "Mega," described as an online cloud-based storage drive.

Based on the evidence found on Phone 1, the government preferred charges against appellee on 15 January 2020. The charges included one specification of committing a lewd act upon a child in violation of Article 120b, UCMJ, and four specifications relating to the possession, production, and distribution of child pornography in violation of Article 134, UCMJ.[3] Appellee then was appointed military defense counsel.

After preferral of charges, CID received information from "Mega" that indicated another device linked to appellee was being used to access child pornography. CID received authorization to seize this other device (Phone 2), which was the same model as Phone 1, a Samsung Galaxy S9.

On 7 February 2020, CID Special Agents (SAs) ███ and ███, met appellee at his unit to seize Phone 2. SA ███ was wearing a body camera which recorded the interaction. As the CID agents approached, SA ███ instructed appellee, "Stop where

---

[3] The Government also preferred one charge of impersonating a CID agent in violation of Article 106, UCMJ, which upon defense's motion, the military judge dismissed, without objection, for failing to state an offense.

you are" before asking "Can I see your phone, please?" SA█ showed appellee his credentials and reminded appellee that they had previously spoken when appellee was arrested the last time. SA█ informed appellee that they had "a warrant" for Phone 2. Sometime during this initial exchange, appellee surrendered Phone 2 to the CID agents.

SA█ then informed appellee that he knew appellee had a defense counsel and asked appellee "if he needs the number." Then, appellee and SA█ moved towards the agents' car while SA█ told appellee to "Just take the number out." Appellee stated he did not have anything to write on. The footage reveals that either the agent handed Phone 2 back to appellee or leaned over with Phone 2 and allowed appellee to manipulate it while SA█ stood next to appellee and SA█ stood directly in front of appellee, both agents observing appellee's actions. Over the next few seconds, SA █ is heard saying, "Just take the number out please," "Where's the phone number?" and "This one right here?" To this last question, when appellee responded affirmatively, SA█ quickly retrieved Phone 2 from appellee. One of the agents recited the phone number out loud and informed appellee that they would give the number to his commander.[4] After the CID agents returned to their car, the only conversation was the manner by which appellee may have unlocked the phone.

CID's search of Phone 2 revealed additional evidence of child sexual abuse material. On 1 May 2020, the government preferred an additional charge for possession of child pornography in violation of Article 134, UCMJ.

Before trial, defense moved to suppress, among other things, the evidence seized from Phone 2 as violating the Fifth Amendment.[5] The defense argued requiring appellee to open his cell phone under the guise of obtaining his defense attorney's contact information was testimonial and incriminating because Appellee's actions implied both ownership and knowledge of the security settings of Phone 2, thereby providing a link in the chain of evidence. In response, the government concurred with the facts and evidence submitted by the defense but stated it could not argue for or against suppression because it was unclear whether appellee had unlocked Phone 2 using a passcode or biometrics. The military judge held an Article 39(a), UCMJ, session to litigate the motion on 26 August 2024, immediately before trial. During this session, the government did not introduce any evidence beyond what defense had already submitted, nor did they call either of the CID agents to

---

[4] The military judge found that the government failed to present any evidence indicating that CID actually provided the phone number to appellee's commander.

[5] The defense argued CID's actions related to Phone 2 also violated the Fourth and Sixth Amendments. The military judge disagreed.

testify.[6] The military judge announced he was granting appellee's motion to suppress the contents of Phone 2 and issued a written ruling later that day.

In his written ruling, the military judge concluded that SA ███ was required to administer Article 31, UCMJ, rights warnings before effectively asking appellee to unlock his phone which was an act reasonably calculated to elicit an incriminating response. That is, a response which admitted appellee's exercise of ownership or control over the device and provided unfettered access to the information on Phone 2, furnishing a link in the chain of evidence necessary to prosecute appellee, as it did in *United States v. Mitchell*, 76 M.J. 413 (C.A.A.F. 2017), cited by the military judge in his ruling.

Later that evening, the government moved for reconsideration. The government argued CID did not require appellee to enter any type of passcode or information into Phone 2 and that the use of a passcode, as distinct from the use of a person's face to open the phone, was pivotal. The government argued asking appellee to open his phone by using his face was neither an interrogation nor a request for a statement triggering the protections against self-incrimination or the rights afforded under Article 31, UCMJ. The following day, before opening statements, the military judge allowed the government to argue for reconsideration of his ruling. But the government declined to call any additional witnesses and conceded that it did not dispute any of the military judge's findings of fact. The military judge reiterated the facts and evidence before the court to include the body camera footage which he reviewed "again carefully last night." After the military judge provided a recitation of the facts, the government stated they did not believe the CID agents, if called, would contradict any of those facts. The military judge then provided supplemental conclusions of law. The military judge found the CID's requests of "Do you need the attorney's number? Just take the number out, please. Where's the phone number?" constituted an interrogation. He further stated:

> Words and actions of the CID agents were designed to elicit a transmission of information from the accused to the phone that would furnish not just a link, but the necessary and exclusive link to the expected incriminating evidence. Transmission of information, be it in the form of the shape of his face, the configuration of his fingerprints, the numbers or letters or symbols, or even a pattern drawn onto the phone in whatever form that unlocked the phone, that unlock code provided evidence of

---

[6] We note that under Military Rule of Evidence [Mil. R. Evid.] 304(f)(6), when the defense moves to suppress an accused's involuntary statement or any evidence derived therefrom, the prosecution has the burden of establishing the admissibility of the evidence.

past activities that the agent expected would be
incriminating, anticipated for use at a criminal trial, and
would be prepared to testify about.

The military judge reconsidered his ruling and again suppressed the evidence from Phone 2. After a short recess, the government notified the military judge of its intent to appeal his ruling. That same day, 27 August 2024, the government filed notice of its intent to appeal under Article 62, UCMJ. Following the notice of appeal, the military judge issued a supplemental ruling on 29 August 2024, which included an additional finding that there was "insufficient evidence before the Court to determine *by what method* the Accused unlocked his phone after prompting by investigators: the video does not show the Accused's hands, gestures, or the phone." (emphasis in original).

## LAW AND DISCUSSION

### A. Standard of Review and Applicable Law

"Government appeals in criminal cases are disfavored and may only be brought pursuant to statutory authorization." *United States v. Jacobsen*, 77 M.J. 81, 84 (C.A.A.F. 2017). Under Article 62, UCMJ, the United States may appeal an interlocutory "order or ruling which excludes evidence that is substantial proof of a material fact in the proceeding." UCMJ art. 62(a)(1)(B); *see also United States v. Wuterich*, 67 M.J. 63, 70-72 (C.A.A.F. 2008).

Appellee does not contest our jurisdiction. Nevertheless, we are satisfied that the appeal meets the criteria of Article 62, UCMJ, to include that the evidence at issue is substantial proof of a material fact in appellee's proceeding, and we determine this court has jurisdiction. *Jacobsen*, 77 M.J. at 85 (stating a court of criminal appeals must satisfy itself that it has appellate jurisdiction before proceeding to review the merits).

Turning to the standard of review for this Article 62, UCMJ, appeal, "this court reviews the military judge's decision directly and reviews the evidence in the light most favorable to the party which prevailed at trial." *United States v. Lewis*, 78 M.J. 447, 452 (C.A.A.F. 2019) (quoting *United States v. Pugh*, 77 M.J. 1, 3 (C.A.A.F. 2017)). We review a military judge's decision to exclude evidence for an abuse of discretion. *United States v. Bowen*, 76 M.J. 83, 87 (C.A.A.F. 2017). An abuse of discretion occurs "'when the [military judge's] findings of fact are clearly erroneous, the court's decision is influenced by an erroneous view of the law, or the military judge's decision on the issue at hand is outside the range of choices reasonably arising from the applicable facts and the law.'" *United States v. Vargas*, 83 M.J. 150, 153 (C.A.A.F. 2023) (quoting *United States v. Stellato*, 74 M.J. 473, 480 (C.A.A.F. 2015) (alteration in original)). This abuse of discretion standard

applies to interlocutory appeals under Article 62, UCMJ. *United States v. Becker,* 81 M.J. 483, 488 (C.A.A.F. 2021); *see also Vargas,* 83 M.J. at 153.

Article 62, UCMJ, limits this court's authority to "act only with respect to matters of law." UCMJ art. 62(b). Thus, we are "bound by the military judge's factual determinations unless they are unsupported by the record or clearly erroneous," *United States v. Pugh,* 77 M.J. 1, 3 (C.A.A.F. 2017), and "may not 'find [our] own facts or substitute [our] own interpretation of the facts.'" *Becker,* 81 M.J. at 489 (quoting *United States v. Cossio,* 64 M.J. 254, 256 (C.A.A.F. 2007)).

"'A servicemember's protection against compulsory self-incrimination is unparalleled in the civilian sector' because '[t]his fundamental right is protected by both the Fifth Amendment *and* Article 31, UCMJ.'" *United States v. Nelson,* 82 M.J. 251, 255 (C.A.A.F. 2022) (quoting *United States v. Mapes,* 59 M.J. 60, 65 (C.A.A.F. 2003) (alterations and emphasis in original). Under Article 31(b), UCMJ, no one subject to the UCMJ "may interrogate, or request any statement from, an accused or a person suspected of an offense without first informing him of the nature of the accusation and advising him" of the right not to make a statement and that any statement may be used as evidence against him. UCMJ art. 31(b).[7] The statute further provides that any statement obtained from any person in violation of this article may not be received into evidence against him at a court-martial. UCMJ art. 31(d).

Thus, Article 31, UCMJ, protections are "broader" than those afforded under the Fifth Amendment because they are required before questioning anyone suspected of an offense, not just those in custody, and provide a statutory restriction against admissibility of unwarned statements at courts-martial. *United States v. Swift,* 53 M.J. 439, 445 (C.A.A.F. 2000) (stating the statute reflects Congress' decision "that the unique circumstances of military service required specific statutory protections for members of the armed forces"). As such, a statement taken in violation of Article 31(b), UCMJ, "is involuntary and therefore inadmissible." Mil. R. Evid. 305(c)(1).[8] But like the Fifth Amendment, Article 31, UCMJ, "focuses on testimonial compulsion." *Nelson,* 82 M.J. at 255 (quoting *United States v. Williams,*

---

[7] Article 31(b) "warnings are required when '(1) a person subject to the UCMJ, (2) interrogates or requests any statement, (3) from an accused or person suspected of an offense, and (4) the statements regard the offense of which the person questioned is accused or suspected.'" *United States v. Metz,* 84 M.J. 421, 426 (C.A.A.F. 2024) (quoting *United States v. Jones,* 73 M.J. 357, 361 (C.A.A.F. 2014)).

[8] There are some narrow exceptions to the Article 31(b), UCMJ, warning requirement, including the "operational context," *see e.g., United States v. Ramos,* 76 M.J. 372, 377 (C.A.A.F. 2017), which the government does not argue, and we do not find are applicable here.

23 M.J. 362, 366 (C.M.A. 1987) (internal quotations omitted)); *see also* Mil. R. Evid. 301(a) (stating "The privileges against self-incrimination are applicable only to evidence of a testimonial or communicative nature"); *Schmerber v. California*, 384 U.S. 757, 761 (1966) (stating "the privilege protects an accused only from being compelled to testify against himself, or otherwise provide the State with evidence of a testimonial or communicative nature.").

*B. Discussion*

On appeal before this court, the government argues first that CID's actions did not constitute an interrogation requiring rights advisement, because the agents' actions neither sought nor would likely cause an incriminating response from appellee. Second, the government argues that appellee's act of unlocking Phone 2 with facial recognition was not testimonial because physical features, such as one's face, are devoid of mental processes that would otherwise be protected by Article 31(b), UCMJ. Third, appellee's statements were otherwise voluntary and non-incriminating.

Resolution of the government's appeal requires us to address three interrelated questions: (1) was CID required to advise appellee of his rights under Article 31, UCMJ; (2) was CID's query about appellee's counsel's phone number an interrogation under Mil. R. Evid. 305(b) and applicable case law; and (3) was appellee's response "testimonial or communicative" in nature to be a statement protected by Article 31, UCMJ. For the reasons discussed below, we answer each question in the affirmative.

*1. Article 31(b) Advisal*

As a preliminary matter, neither party seems to dispute that appellee was suspected of possessing child pornography when CID Special Agents approached him to seize Phone 2, such that Article 31(b) rights would have been required prior to questioning. *Metz*, 84 M.J. at 426. Child sexual abuse material had already been discovered on Phone 1, CID had been notified by "Mega" that appellee was using a second device to continue to engage in similar crimes, and CID had received a search authorization from a magistrate to seize Phone 2.

While appellee had been previously advised of his Article 31, UCMJ, rights after the seizure of Phone 1 and before charges were initially preferred, the temporal break after the first advisal was too great for CID's later interactions on 7 February 2020 to constitute a continuance of the first interview. *Compare Nelson*, 82 M.J at 256 n.7 ("The general rule is that if warnings are given properly the first time and there is a continuance of the interrogation, separate warnings are not needed."). As such, prior to questioning appellee, CID was required to advise appellee of his rights under Article 31(b), UCMJ.

## 2. *Whether Appellee was Subject to Interrogation*

The military judge determined, under these circumstances, that asking appellee whether he needed his attorney's phone number constituted an interrogation. We agree. An interrogation includes any formal or informal questioning seeking or likely to elicit an incriminating response. Mil. R. Evid. 305(b)(2). This rule was "broadly fashioned to thwart attempts to circumvent warning requirements through subtle conversations." *United States v. Traum*, 60 M.J. 226, 229 (C.A.A.F. 2004) (internal citations and quotations omitted). But "interrogation involves more than merely putting questions to an individual." *Id.* (finding asking appellant to take a polygraph was not an interrogation); *see also United States v. Robinson*, 77 M.J. 303, 306 (C.A.A.F. 2018) (holding a request for consent was not an interrogation). Thus, in determining whether "an incriminating response is sought or is the reasonable consequence of the comment or remark," the court considers the totality of the circumstances. *Traum*, 60 M.J. at 229.

Here, law enforcement agents asked appellee, "Do you need the number?" for his defense counsel. In a vacuum, this question by itself is innocuous. But we analyze the question not in a vacuum but in the context of the circumstances in which it was asked. When CID posed this question to appellee, they had just taken possession of appellee's cell phone. At the time, appellee was suspected of possessing child pornography on said phone. And, at the time, the phone was locked. We concur with the military judge's conclusion that CID's question was "designed to cause the [appellee] to demonstrate his method of unlocking the phone, reveal the code if there was one, and to have the [appellee] transform his phone from a rectangular piece of plastic into an open trove of information."

Unlike *Traum* where law enforcement asked whether the suspect would take a polygraph, 60 M.J. at 229, or *Robinson* where agents asked for consent to search, 77 M.J. at 306 – questions which both resulted in nothing more than a "yes" or "no" answer – here, the reasonable and foreseeable outcome of CID's inquiry was appellee unlocking his phone to access his attorney's phone number. Thus, while unlocking the phone was not the *only* response appellee could have provided, it was one reasonably created by the circumstances in which it was asked.

The military judge's conclusion that this was an interrogation was further supported by his findings of fact, including: (1) the agents asked whether appellee needed his attorney's number while both were positioned nearby and able to observe how appellee unlocked the phone; (2) after leaving appellee, the agents immediately returned to their car and discussed how appellee unlocked the phone; (3) there was no evidence that CID followed through on the justification for asking the question in the first place—ensuring appellee's access to counsel; and (4) CID did not possess

an independent need for the defense counsel's phone number.[9] While appellant rightly points out that several of CID's questions identified by the military judge – such as "where is his number" and "is that him right there" – occurred after appellant had already unlocked the phone, the Article 31(b), UCMJ, violation occurred after the first query. *See e.g.*, *United States v. Byers*, 26 M.J. 132, 134-35 (C.M.A. 1988) (stating a "single question may constitute an interrogation" and "Article 31(b) contemplates that the rights warnings should be given when an interrogation begins").

In concluding that CID's questions were an interrogation, the military judge relied upon our superior court's holding in *United States v. Mitchell*, 76 M.J. 413 (C.A.A.F. 2017). The government argues this was error because *Mitchell*, unlike the case before us, involved an accused's Fifth Amendment right to counsel rather than Article 31, UCMJ, rights advisement and the military judge's ruling inappropriately expanded the court's holding. *Mitchell*, however, addressed whether asking a suspect to unlock his phone after it has been seized by law enforcement constitutes interrogation, similar to the issue here, albeit under the Fifth Amendment privilege against self-incrimination. *Id.* at 415. But the rubric for what constitutes an interrogation under Article 31, UCMJ, mirrors the rubric for what constitutes an interrogation under the Fifth Amendment and asks the same question: whether the accused was subject to questioning – express or implied – that law enforcement should know is reasonably likely to elicit an incriminating response. *Id.* at 417-18; *see also Byers*, 26 M.J. at 134 (stating "Our construction of 'interrogate' for purposes of Article 31(b) corresponds with the Supreme Court's interpretation of 'interrogation' in applying the warning requirement of *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966)."). Thus, *Mitchell* is applicable and the military judge's reliance was not error.[10]

---

[9] At trial, appellant conceded that the first to third findings were accurate and that, if called, SA ▮ would not have contradicted these facts. As such, appellant cannot complain of those concessions now. *See e.g.*, *United States v. Suarez*, ARMY MISC 20170366, 2017 CCA LEXIS 631, at *10 (Army Ct. Crim. App. 27 Sep. 2017) (mem. op.) ("when the government concedes an issue at trial and the military judge accepts the concession, then the government cannot complain to this court that the military judge erred"). The military judge provided the fourth finding when summarizing his basis for suppression and did not ask government whether they agreed with his characterization.

[10] The government also argues the military judge should have relied instead upon *United States v. Nelson*, 82 M.J. 251 (C.A.A.F. 2022), which the government argues require appellee's statement to be compelled as well as testimonial and incriminating. We do not find *Nelson* directly on point, as that case did not involve a failure to administer Article 31 rights prior to questioning.

As the court reiterated in *Mitchell*, the privilege against self-incrimination "not only extends to answers that would in themselves support a conviction . . . but likewise embraces those which would furnish a link in the chain of evidence needed to prosecute . . . ." *Mitchell*, 76 M.J. at 418 (quoting *Hoffman v. United States*, 341 U.S. 479, 486 (1951) (internal quotations omitted). In *Mitchell*, which was also an interlocutory appeal, the investigators not only asked appellee to provide his passcode, which he initially refused, but then "switched tactics and succeeded in getting appellee to enter his passcode rather than verbally provide it." *Id.* This request, the court found "was part of the same basic effort to convince Appellee to provide the information necessary for the Government to access and search the contents of his phone, and to help prove that he himself had the same ability." *Id.* Thus, similar to what the military judge found in this case, the government was seeking an answer which would serve as a link in the chain of evidence needed to prosecute. *Id.* Just like in *Mitchell*, appellee's response not only gave the government access to the direct evidence but "also constituted direct evidence." *Id.* (citations omitted).[11] His response of unlocking the phone was an implicit statement that he both owned the phone and knew how to unlock it.

The court in *Mitchell*, however, did not address whether the delivery of the passcode to law enforcement was a testimonial communication. *Id.* at 419. As the government correctly notes, the court in *Mitchell* was enforcing the *Miranda* right to counsel and protections afforded by *Edwards v. Arizona*, 451 U.S. 477 (1981). *Id.* "Because *Edwards* forbids interrogation following the invocation of the *Miranda* right to counsel, not just interrogation that succeeds," the court concluded "those who seek *Edwards* protection do not need to establish that the interrogation produced or sought a testimonial statement in order to establish a violation." *Id.* Thus, while *Mitchell* addresses the prong of whether appellee's response was incriminating, it does not answer whether appellee's response was testimonial, which we address in the next section.

The government further argues that the military judge's conclusion that this was an interrogation was based on an erroneous finding that CID's actions were a ruse to convince appellee to unlock his phone. Though this finding was based on circumstantial evidence, we are unconvinced such a finding was in error. The military judge found if CID "had a genuine need or desire for the defense attorney's contact information, there were several more straightforward and more appropriate ways they could have obtained the information," such as "the local Staff Judge Advocate office, the local Trial Defense Services office, the base directory, the

---

[11] We do not necessarily agree with the military judge that appellee's unlocking Phone 2 was the "exclusive link" to the incriminating evidence, but appellee's response certainly provided the government direct access to the direct evidence on Phone 2 as well as constituted direct evidence, itself, of the link in the chain of evidence needed to prosecute.

unit's web page, etc." This finding is not clearly erroneous. Additionally, there was no evidence that the CID agents followed through and gave the phone number to appellee's commander. Accordingly, based on the record, the military judge's finding that CID's question was a ruse is not clearly erroneous. We also note that the military judge stated he made no moral judgment about using a ruse and that ruses are allowed in interrogation.[12] Thus, the military judge did not base the suppression of Phone 2 on the use of a ruse itself. Rather, it was a factor to consider under the totality of the circumstances, a factor that further supported the military judge's conclusion that CID's questioning was seeking or likely to elicit an incriminating response. Moreover, the military judge's consideration of this factor was appropriate because the circumstances in which questions are asked are relevant.

For example, in *United States v. Williams*, a military policeman who had just apprehended the appellant for assaulting another soldier, asked the appellant, without a rights advisement, about blood stains on his coat as it was being seized as evidence. 23 M.J. 362 (C.M.A. 1987). The government argued appellant's unwarned response was admissible because the military policeman's question was "analogous . . . to questions asked when an arrested suspect is booked" – such as questions about the suspect's identity or other questions normally attendant to arrest and custody. *Id.* at 367. Under the circumstances of that case, however, our superior court disagreed. *Id.* "If Williams had been bleeding and, in order to determine his physical condition, a question had been asked about how he got hurt, the situation might be different." *Id.* But the military policeman's questions were clearly "intended to help solve a suspected crime, rather than to identify a piece of property being taken into police custody." *Id.* Similarly, here, given that CID had no need or desire for the defense counsel's phone number, the questions posed by SA ▮ and SA ▮ were clearly intended to obtain an incriminating response – Appellee's unlocking Phone 2 – without first advising appellee of his Article 31,

---

[12] While the "use of trickery, artifice and subterfuge by investigators in obtaining a substantive statement from an accused is permissive . . . the use of such tactics in obtaining a waiver of rights or in dissuading invocation of rights is not permissible." *United States v. Eire*, 29 M.J. 1008, 1012 (A.C.M.R. 1990) (citing *United States v. McKay*, 26 C.M.R. 307 (C.M.A. 1958)). Law enforcement officials may also induce criminals to bring contraband into plain view. *See e.g., United States v. Salazar*, 44 M.J. 464, 468-69 (C.A.A.F. 1996) (discussing sting operations and the use of informants who misrepresent their identity to execute narcotic transactions bringing the narcotics into plain view); *but cf. Commonwealth v. Wright*, 411 Pa. 81, 190 A.2d 709 (Pa. 1963) (discussed by the court in *Salazar* where the Supreme Court of Pennsylvania found a police ruse used against a spouse to gain seizure of contraband vitiated the seizure). The government in this case, however, did not argue this Fourth Amendment aspect at trial.

UCMJ, rights or requesting his consent, rather than to aid appellee in exercising his right to counsel.

Thus, based on the totality of the circumstances here, we agree with the military judge's conclusion that the CID agent's questions constituted an interrogation.

### 3. Whether Appellee's Response was Testimonial or Communicative

We next turn to whether appellee's response was testimonial in nature. "[T]o be testimonial, an accused's communication must itself, explicitly or implicitly, relate a factual assertion or disclose information." *Doe v. United States,* 487 U.S. 201, 210 (1988). An accused's communications do not need to be verbal or written to qualify as testimonial. *Schmerber,* 384 U.S. at 763-65. Answering this "difficult question . . . often depends on the facts and circumstances of the particular case." *Doe,* 487 U.S. at 214-15 (citing *Fisher v. United States,* 425 U.S. 391, 410 (1976)).

Appellant argues that no testimonial compulsion occurred, as the use of appellant's face to unlock his phone is nontestimonial. To support this position, the government persuasively cites, among other cases, to the Supreme Court's decision in *Doe*. There, the Supreme Court recited its various cases holding certain physical acts were not protected by the self-incrimination privilege. *Doe,* 487 U.S. at 210. For example, an accused may be compelled to provide a blood sample, *Schmerber,* 384 U.S. at 765; or a handwriting exemplar, *Gilbert* v. *California*, 388 U.S. 263, 266-67 (1967); or a voice exemplar, *United States* v. *Dionisio*, 410 U.S. 1, 7 (1973); or be compelled to stand in a lineup, *United States* v. *Wade*, 388 U.S. 218, 221-222 (1967); or to don particular clothing, *Holt* v. *United States*, 218 U.S. 245, 252-53 (1910). In those cases, the Supreme Court found the right against self-incrimination was not implicated because the "the suspect was not required 'to disclose any knowledge he might have,' or 'to speak his guilt.'" *Doe,* 487 U.S. at 211 (internal citation omitted). While the privilege against self-incrimination protects disclosure of the contents of one's mind, *Id.,* it does not extend to real or physical evidence, the source of which is the accused's body, including physical characteristics, like one's face. *Pennsylvania* v. *Muniz*, 496 U.S. 582, 591-92 (1990).

The government also relies upon cases from other jurisdictions to include *United States v. Payne*, 99 F.4th 495 (9th Cir. 2024), where the court held that forcibly using an appellant's thumb to unlock his phone was not testimonial and *State v. Diamond*, 905 N.W.2d 870 (Minn. 2018), where the court found that compelling a fingerprint to unlock the phone merely demonstrated physical characteristics and did not communicate assertions of fact from the appellant's mind. In light of *Doe* and these other cases, the government argues appellee's actions which used physical characteristics to unlock the phone was nontestimonial and therefore is not protected by Article 31, UCMJ.

The military judge, however, specifically found that there was insufficient evidence to determine the method by which appellee unlocked the phone. The government argues this finding was clearly erroneous in light of the body camera footage. The government argues in that recording, after the CID agents had seized the unlocked phone and returned to their car, one agent can be heard stating appellee unlocked the phone with his face and that appellee could not remember the passcode. But as the military judge correctly noted because of the angle of the body camera, the footage does not clearly depict how the phone was unlocked. Mindful that we are precluded from making our own findings of fact, we do not believe that the recording necessarily contradicts the military judge's finding that the evidence was *insufficient* to show the method appellee used when the government, who bore the burden of proof and persuasion at trial to show admissibility, affirmatively declined to call either CID agent to the stand to clarify exactly what occurred.[13]

Ultimately, the military judge seems to conclude, however, that the method did not matter. And under the circumstances of this case, we agree. The line between testimonial and nontestimonial is crossed when the contents of an individual's mind are used against him. *Doe*, 487 U.S. at 211. Here, assuming for the sake of argument that the phone was unlocked using facial recognition, CID did not hold the phone up to appellee's face to unlock the phone, similar to forcibly grabbing a thumb to unlock the cell phone as was done in *Payne*. 99 F.4th at 500. Nor did the CID agents first ask appellee for consent to search the phone. *Compare Robinson*, 77 M.J. at 306 (finding the investigator's request for the phone's passcode was merely a natural and logical extension to effectuate the accused's consent to search). Rather, the agents asked appellee a question which resulted in appellee taking affirmative, cognitive steps that informed CID how to unlock the phone and granted access to the contents within it. *Compare Payne*, 99 F.4th at 513 (noting "the outcome on the testimonial prong may have been different had Officer Coddington required Payne to independently select the finger that he placed on the phone").

The D.C. Circuit Court of Appeals recently decided a similar issue in *United States v. Brown*, 125 F.4th 1186, 2025 U.S. App. LEXIS 1219 (D.C. Cir. 2025). There, following the appellant's arrest, FBI agents discovered a cell phone in appellant's bedroom and brought it to the FBI vehicle where appellant was in custody. *Id.* at *24. The FBI agent asked the appellant for the password to the

---

[13] Again, mindful that we are precluded from making our own findings of fact, we note that the CID agent's statement that appellee did not remember the passcode does not appear to be corroborated by what can be seen and heard from appellee on the body camera footage. In light of that discrepancy, and the lack of a visual in the footage, it was not unreasonable for the military judge to require some additional evidence, such as testimony from SA ▮ before definitively determining the method by which appellee unlocked the phone.

phone, but none of the three provided passcodes unlocked the phone. *Id.* The FBI agents were then able to unlock the phone using appellant's thumbprint. *Id.* The FBI agent testified he could not remember exactly how that was done, but his ordinary practice was to ask the person in custody if he wanted any phone numbers accessed for later use at the police station. *Id.* at *24-25. While the agents had advised the appellant of his *Miranda* rights, which he initially waived, appellant at some point requested an attorney and the agents could not remember whether that was before or after appellant unlocked the phone. *Id.* at *26. As a result, the government conceded the opening of the cell phone was involuntary. *Id.* Based on this concession, the court found the record showed "an FBI agent ordered [appellant] to open the cellphone, and [appellant] complied by placing his thumb on the cellphone." *Id.* at *28. On appeal, the issue before the D.C. Circuit was whether the act of unlocking the phone was testimonial and therefore protected by the Fifth Amendment. *Id.* at *23. The court, under the circumstances of that case, determined that it was. *Id.*

The court analyzed the issue both under the Supreme Court's physical-trait caselaw, e.g., providing blood samples, voice exemplars, and handwriting exemplars, and under the Court's "act-of-production" precedent in cases such as *Doe* and *United States v. Hubbell*, 530 U.S. 27 (2000). *Id.* at *28-34. First, the court noted that not all displays of physical traits are nontestimonial. *Id.* at *29 (noting physiological changes during a lie detector test are "testimonial because they are manifestations of testimonial thoughts" of the accused's mind). The court reasoned while "placing a thumb on a phone may seem akin to submitting to fingerprinting or providing a handwriting exemplar, the act, as performed here, is much closer to responding to a lie detector test or complying with a command to say a password." *Id.* at *30. That is because the "act of unlocking the phone represented the thoughts 'I know how to open the phone,' 'I have control over and access to this phone,' and 'the print of this specific finger is the password to my phone.'" *Id.* Had the FBI agents compelled the appellant to disclose his password or to answer whether he could open the phone, "those answers unquestionably would be testimonial." *Id.* at *31. Thus, compelling the appellant to open the cell phone was no different. *Id.*

The court reached a similar conclusion under the act-of-production caselaw that "recognizes that physical traits can be 'communicative' 'wholly aside from the contents of anything produced' . . . when the action 'impl[ies] assertions of fact.'" *Id.* (quoting *Fisher*, 425 U.S. at 410 and *Doe*, 487 U.S. at 209); *see also Hubbell*, 530 U.S. at 31-32 (where the government issued a subpoena duces tecum for the production of documents and the respondent, after given an assurance of immunity, complied). The distinction between *Doe*, where the Supreme Court found the compelled production of bank accounts was nontestimonial, and *Hubbell*, where the Supreme Court found the opposite - that the compelled production of documents was testimonial, the D.C. Circuit found - hinged on whether the act of production asserted or confirmed the existence of the item, the control or custody over the item,

or the authenticity of the item. *See Brown*, 125 F.4th at *32-34. The D.C. Circuit concluded, like *Hubbell*, the appellant's response to the FBI agents command to unlock the phone, "disclosed his control over the phone, his knowledge of how to access it, and the existence, authenticity, and ownership of documents within it." *Id.* at 34. Thus, the court concluded under both lines of cases – those addressing physical traits and those addressing the act of production – appellant's compelled unlocking of the phone was testimonial. *Id.* We find the court's reasoning in *Brown* persuasive.[14]

Similar to *Brown*, appellee's unlocking the phone, by whatever means, conveyed his thoughts that he had access to Phone 2, disclosed his knowledge of the level of control over Phone 2 by the use of security measures, and demonstrated that he actively used Phone 2, with the storage of his defense attorney's number. Not only did appellee's actions represent these thoughts but they also disclosed the existence, authenticity, and ownership of the contents within. By obtaining this response through unwarned questioning, the contents of appellee's mind were used against him. Thus, we find appellee unlocking Phone 2, however effectuated, constituted a testimonial and communicative statement.

The government further argues that although the military judge correctly found that appellant's actions in unlocking the phone were voluntary for Fifth Amendment purposes that he erred in not applying that to his Article 31(b), UCMJ, analysis. As we reiterated previously, Article 31(b), UCMJ, rights are broader than Fifth Amendment privileges against self-incrimination. Thus, Mil. R. Evid. 305(c)(1) provides that a "statement obtained from the accused in violation of the accused's rights under Article 31 is involuntary and therefore inadmissible against the accused" except in certain circumstances not applicable here.[15] Thus, CID's failure to administer the Article 31(b), UCMJ, rights warnings made appellee's response involuntary. *See also* Article 31(d) (providing "[n]o statement obtained from any person in violation of this article . . . may be received in evidence against him in a trial").

Under Mil. R. Evid. 304, where appellee made a timely motion and the military judge correctly found that appellee's response was in violation of his Article 31, UCMJ, rights and thus involuntary, the involuntary statement and any

---

[14] The *Brown* court also distinguished its holding from *Payne*, noting that the appellant in *Brown* was instructed to open the phone, in contrast to *Payne*, where law enforcement forcibly grabbed appellant's thumb to unlock the phone. 2025 U.S. App. LEXIS 1219, at *34 n.2.

[15] The rule states the statements are inadmissible except as provided in subdivision (d), which discusses the presence of counsel, when requested, before the interrogation proceeds.

evidence derived therefrom were inadmissible at trial to prove guilt. *See also Mitchell*, 76 M.J. at 420 (finding the contents of the phone were inadmissible).[16]

The military judge's findings of fact underpinning his ultimate conclusions of law were supported by evidence contained in the record,[17] his conclusions of law were not erroneous, and the remedy was within the range of choices reasonably arising from the applicable facts and the law.

For the aforementioned reasons, we hold the military judge did not abuse his discretion in suppressing the contents of Phone 2.

## CONCLUSION

The government appeal is DENIED.

Judge MORRIS and Judge PARKER concur.

FOR THE COURT:



// JAMES W. HERRING, JR. //
Clerk of Court

---

[16] The government did not argue the foregone conclusion doctrine at trial. *See e.g., Fisher*, 425 U.S. at 410 (stating the Fifth Amendment does not protect an act of production when any potentially testimonial component of the act of production—such as the existence, custody, and authenticity of evidence—is a "foregone conclusion" that "adds little or nothing to the sum total of the Government's information.") Nor did the government argue inevitable discovery. Because neither was raised at the trial level, we do not address those doctrines on appeal.

[17] The military judge made an additional finding in his ruling dated 29 August 2024 that appellant was in custody when the CID agents seized Phone 2. But because we determine this finding is not dispositive on the issue as presented on appeal, we make no determination as to whether the military judge's findings and conclusions of law on that issue are supported by the record and applicable caselaw. *See e.g., United States v. Chatfield*, 67 M.J. 432, 438 (C.A.A.F. 2009) (outlining several factors for the courts to consider in determining whether a person was subject to restraint on freedom of movement of the degree associated with a formal arrest).